# EXHIBIT 3

EXHIBIT 3

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 3348

FILED

2018 OCT 16 | P 4: 48

ROY A. COOPER, III, in his official capacity
as GOVERNOR OF THE STATE OF
NORTH CAROLINA,

Plaintiff,

vs.

PHILIP E. BERGER, in his official capacity
as PRESIDENT PRO TEMPORE OF THE
NORTH CAROLINA SENATE; TIMOTHY
K. MOORE, in his official capacity as
SPEAKER OF THE NORTH CAROLINA
HOUSE OF REPRESENTATIVES; and THE
STATE OF NORTH CAROLINA,

Defendants.

**ORDER**

THIS CAUSE coming on to be heard and being heard before the undersigned duly-appointed three-judge Court during the July 26, 2018, special session of Wake County Superior Court upon (1) the Motion to Dismiss filed by Defendants Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives ("Legislative Defendants") and (2) the Motion for Summary Judgment filed by Plaintiff Roy A. Cooper, III, in his official capacity as Governor of the State of North Carolina regarding the constitutionality of Part VIII of Session Law 2018-2, and Sections 7(h) (composition of county boards and rotation of chair of county boards) and 17 (appointment of executive director of Bipartisan State Board) of Session Law 2017-6. The Plaintiff challenges each of these sections individually and standing alone, as well as making a facial constitutional challenge to these entire statutes.

**EXHIBIT 3**

This Court heard arguments from counsel Jim W. Phillips, Eric M. David, and Daniel F.E. Smith of Brooks, Pierce, McLendon, Humphrey & Leonard, LLP for Plaintiff, and heard arguments from counsel Noah H. Huffstetler, III and D. Martin Warf of Nelson Mullins Riley & Scarborough LLP for Defendants. The motions have been fully briefed, and the motions are ripe for consideration. Upon consideration of all matters of record and affidavits on file, the Court finds and concludes as follows:

## I.

## Background of Session Law 2017-6

1.      Session Law 2017-6 was enacted into law on April 25, 2017, and reorganized the State Board of Elections ("Board of Elections") and the State Ethics Commission ("Ethics Commission") into the Bipartisan State Board of Elections and Ethics Enforcement ("Bipartisan State Board").[1]  The Bipartisan State Board was to consist of eight members to be appointed by the Governor—four from each of the two largest political parties—to be selected from lists provided by the State party.  Members could be removed by the Governor from the State Board only for misfeasance, malfeasance, or nonfeasance.

2.      On April 26, 2017, Plaintiff filed suit in Wake County Superior Court Case No. 17 CVS 5084, raising a facial constitutional challenge to Sections 3 through 22 of Session Law 2017-6 (codified as Chapter 163A) and seeking to enjoin the enforcement thereof.

3.      On June 1, 2017, this Court entered its unanimous Order granting Defendants' Motion to Dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) for lack of subject matter jurisdiction based upon a non-justiciable political question and dismissing Plaintiff's constitutional challenge to Sections 3 through 22 of Session Law 2017-6.

---

[1] Session Law 2017-6 also repealed Part I of Session Law 2016-125, a law passed by the General Assembly at the end of 2016 that was an earlier effort to merge the Board of Elections and the Ethics Commission and which this Court found unconstitutional.  An appeal was taken but dismissed as moot when Session Law 2017-6 was passed.

**EXHIBIT 3**

4.      On June 30, 2017, Plaintiff filed his Petition for Discretionary Review prior to review by the Court of Appeals, which was granted by the Supreme Court on July 19, 2017.

5.      Following oral argument, the Supreme Court asked this Court to provide additional information regarding this Court's June 1, 2017 decision, and the Supreme Court also asked this Court to determine how it would rule on the merits if, in fact, there was subject matter jurisdiction.

6.      On October 31, 2017, this Court certified to the Supreme Court an Order providing findings of fact and conclusions of law supporting its decision to dismiss the action pursuant to lack of subject matter jurisdiction and also providing a unanimous indicative ruling that Session Law 2017-6 was not unconstitutional.

7.      On January 26, 2018, the Supreme Court, in a 4-3 decision, issued its opinion reversing and remanding this Court's June 1, 2017 order, *see Cooper v. Berger*, 370 N.C. 392, 422, 809 S.E.2d 98, 117 (2018), finding that the General Assembly's merger of the Board of Elections and Ethics Commission into the Bipartisan State Board was a constitutional exercise of its authority but that provisions of Session Law 2017-6 relating to the membership of and appointment to the Bipartisan State Board were unconstitutional. *Id.* at 409, 415-16, 809 S.E.2d at 108, 112. In its opinion, predicated on its interpretation of *McCrory v. Berger*, 368 N.C. 633 (2016), the Supreme Court expressly discussed Plaintiff's arguments regarding the unconstitutionality of the selection of the Executive Director of the Bipartisan State Board, the composition of the county boards of elections, and the rotation of the chair of the Bipartisan State Board among political parties but expressed no opinion regarding any possible independent separation-of-powers violations created by those provisions. *Id.* at 420-21, 809 S.E.2d at 115-16.

8.      The case was remanded to this Court for entry of a final judgment, *see id.* at 422, 809 S.E.2d at 116, and, on March 5, 2018, this Court entered its Final Judgment declaring N.C. Gen. Stat. § 163A-2 void and of no effect and permanently enjoining § 163A-2. This Court did not invalidate any other portion of Session Law 2017-6, although Plaintiff's counsel argued that all of Sections 3 through 22 of the Session Law should be voided following the Supreme Court's opinion.

EXHIBIT 3

9.      On March 6, 2018, Plaintiff filed his Motion to Enforce Mandate, requesting that the Supreme Court declare Sections 3 through 22 of Session Law 2017-6 void and of no effect. On March 13, 2018, the Supreme Court entered its *per curiam* Order denying the Motion to Enforce Mandate.

## Background of Session Law 2018-2

10.      On February 13, 2018, House Bill 90, which contains material amendments to § 163A-2, was ratified and presented to the Governor for his action. Under House Bill 90, the Bipartisan State Board consists of nine members; the Governor appoints four members from each of the State's two largest political parties (i.e., the Democratic and Republican parties) from lists of six nominees provided to the Governor by the State party chairs for the two parties. The ninth member is not to be affiliated with either the Democratic or Republican party but is to be appointed by the Governor from a list of two nominees submitted by the other eight members of the Bipartisan State Board. Any member of the Bipartisan State Board may be removed by the Governor in his discretion.

11.      On March 16, 2018, House Bill 90 became Session Law 2018-2 when the Governor neither approved nor returned House Bill 90 to the General Assembly with his objections in the time allowed by law. *See* N.C. Const. Art. II, Sec. 2(7) (after bill is presented to the Governor, it shall become a law unless, within 30 days after adjournment for more than 30 days, it is returned by the Governor with objections and veto message).

12.      These previous and new statutes are sometimes referred to collectively herein as the "Acts."

## Procedural Background

13.      On March 13, 2018, Plaintiff filed his Verified Complaint bringing a facial challenge to the constitutionality of (1) Part VIII of Session Law 2018-2; (2) Part VIII of Session Law 2018-2 together with the "unamended portions" of Session Law 2017-6; (3) Sections 7(h) and 17 of Session Law 2017-6, separately; and (4) the Rotating Chair Provisions of Session Law 2018-2 and Session Law 2017-6.

- 4 -

EXHIBIT 3

14.     By Order dated March 14, 2018, and pursuant to N.C. Gen. Stat. § 1-267.1, Chief Justice Mark Martin of the North Carolina Supreme Court assigned the undersigned to the three-judge Court to hear Plaintiff's constitutional challenge.

15.     On May 1, 2018, Defendants filed their Motion to Dismiss and Answer to Verified Complaint.

16.     On June 15, 2018, Plaintiff filed his Motion for Summary Judgment.

### North Carolina Constitutional Provisions Implicated

17.     "The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other."  Article I, Sec. 6.

18.     "The legislative power of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives."  Article II, Section 1.

19.     "The executive power of the State shall be vested in the Governor."  Article III, Section 1.

20.     "The Governor shall take care that the laws be faithfully executed."  Article III, Section 5(4).

### II.

### Standards of Review on Constitutional Challenge

21.     When assessing a challenge to the constitutionality of legislation, this Court's duty is to determine whether the General Assembly has complied with the Constitution.  If constitutional requirements are met, the wisdom of the legislation is a question for the General Assembly. *Hart v. State*, 368 N.C. 122, 126 (2015). The party meeting the constitutional challenge must show there are no circumstances under which the statute might be unconstitutional. *Hart v. State*, 368 N.C. 122 (2015).

- 5 -

EXHIBIT 3

22.     Plaintiff's claim is a facial constitutional challenge to a law based on an alleged violation of the separation of powers, in particular the ability of the Governor to faithfully execute the laws.

## III.

### Findings of Fact, Conclusions of Law, and Judicial Rulings

#### A.  Doctrine of *Res Judicata*

23.     As noted above in paragraph 2, previously in Wake County Superior Court Case 17-CVS-5084, Plaintiff successfully challenged Sections 3 through 22 of Session Law 2017-6 as being unconstitutional, which includes Sections 7(h) and 17, but did not raise the claims as to these or any other provisions of Session Law 2017-6.

24.     In this current action, Plaintiff has alleged for the first time that Sections 7(h) and 17 of Session Law 2017-6, which were not amended by Session Law 2018-2, are unconstitutional.

25.     Defendants have asserted the affirmative defense of *res judicata* as to those new claims. The requisite elements of *res judicata* are: 1) The parties are the same as in the first action; 2) The claim alleged in the current action is the same as in the prior action; and 3) There was a final judgment rendered on the raised claim. *Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 84 (2005).

26.     Under the doctrine of *res judicata,* any right, fact, or question in issue and *directly adjudicated* on or necessarily involved in the determination of an action before a competent court…*on the merits is conclusively settled by the judgment* therein cannot again be litigated between the parties and privies. *Gaither Corp. v. Skinner*, 241 N.C. 532, 535, 85 S.E.2d 909, 911 (1955) (emphasis added).

27.     Defendants concede that not all constitutional claims Plaintiff alleges in this action are barred by *res judicata.* (Defendants' attorney, Mr. Warf, trial transcript, pp. 72-74).

28.     Plaintiff contends that the newly enacted provisions of Session Law 2018-2, the constitutionality of which Plaintiff has challenged in this action, have changed the totality of the

- 6 -

EXHIBIT 3

circumstances in the case which the Court must analyze to determine whether the elements of *res judicata* are satisfied. (Plaintiff's attorney, Mr. Smith, Trial Transcript p. 95).

29.     Defendants cite *City of Asheville v. State*, 192 N.C. App. 1 (2008), as a primary legal authority in support of their argument. In that decision, the Court of Appeals found that *res judicata* barred a challenge against several statutes, setting forth three reasons:

1)      The city had previously litigated an earlier constitutional challenge to the previously enacted statute, provisions of which were newly challenged in the later action;

2)      Nothing prevented the city from raising all possible constitutional claims to that statute in the previous action;

3)      The Supreme Court expressly ruled the statute was not constitutional.

30.     The decision of *City of Asheville v. State*, *Supra* is distinguished from the facts of this case. In the instant case, neither the second or third criteria of the Supreme Court's analysis in *Asheville* exists. The General Assembly has changed the statutory scheme of the Acts, which impacts the nature and effect of the laws as a whole. In *Cooper*, there was no holding that any portion of 2017-6 not challenged was either constitutional or unconstitutional. Instead, the Supreme Court made its decision on a narrow ground, invalidating a small portion of Session Law 2017-6. Rather than ruling on the overall constitutionality of 2017-6, the Supreme Court afforded the General Assembly the opportunity to enact new provisions which would meet the constitutional standard. In doing so, the Supreme Court did not abdicate its judicial role as to determining the constitutionality of a law which could be amended, but instead gave due deference and respect for the separate legislative branch of government.

31.     Defendants acknowledge that a change in the totality of circumstances can result in a different adjudication in a subsequent challenge to a law which has undergone some legislative changes:

It was the totality of the circumstances limitations on appointment, supervision and removal that led to the Court's determination that the

- 7 -

EXHIBIT 3

provisions of Session Law 2017-6 concerning the membership on an appointment to the bipartisan board was unconstitutional. Any material change to just one of the factors in the totality of the circumstances could lead to a different constitutional outcome. (Defendants' Memorandum In Support of Motion to Dismiss, p. 9).

32.     By passing Session Law 2018-2, the legislature has changed the totality of the circumstances of the nature and effect of the Acts. Thus, the entire statutory scheme as a whole has changed. Even the unmodified portions of the 2017-6 legislation, are changed in now that they are contained in an entirely different law and viewed in an entirely different context from when the Court previously reviewed them.

33.     The Supreme Court in *Cooper* made plain that the overall structure of the statutory scheme could well affect the constitutional challenge. Indeed, the very example it used was how the Bipartisan State Board is structured, which is precisely what the General Assembly changed in adopting Session Law 2018-2:

> As the bipartisan State Board is structured in Session Law 2017-6, the General Assembly's decision to appoint the Executive Director of the Bipartisan State Board and to preclude the Bipartisan State Board from either selecting a new Executive Director prior to May 2019 or removing the Executive Director in the absence of "cause," N.C.G.S. § 163A-6(b), could impermissibly constrain the Governor's ability to ensure that the laws are faithfully executed. *See McCrory*, 368 N.C. at 645-46, 781 S.E.2d at 256-57. On the other hand, in the event that the membership of the Bipartisan State Board is structured in such a manner as to pass constitutional muster under Article III, Section 5(4) of the North Carolina

- 8 -

EXHIBIT 3

Constitution and the Board is given adequate control over the manner in which the duties assigned to the Executive Director are performed, the Bipartisan State Board's ability to supervise and control the actions of the Executive Director might suffice to give the Governor adequate control over the Executive Director's activities, which appear to be primarily administrative in nature, for separation-of-powers purposes. *Cooper v. Berger, Supra*, pp. 38-39.

34.    In *Cooper v. Berger*, the Supreme Court declined to rule on the constitutionality of the 2017-6 as to the Executive Director, which is now challenged:

For that reason, an interim appointment to the position of Executive Director of the Bipartisan State Board made by the General Assembly for a limited term might not constitute a separation-of-powers violation in the event that the Governor otherwise has sufficient control over the Bipartisan State Board. For that reason, given our determination that, in light of the totality of the circumstances, the manner in which the members of the Bipartisan State Board must be selected pursuant to Session Law 2017-6 is constitutionally invalid, we need not reach the issue of whether the provisions governing the selection of the Executive Director constitute a separate violation of Article III, Section 5(4) of the North Carolina Constitution at this time and decline to do so. *Cooper v. Berger, Supra*, p. 40.

- 9 -

EXHIBIT 3

35.     The Supreme Court in *Cooper* also expressly left open the constitutional issues regarding the chair positions at the structure of the county boards of elections, which is now challenged:

> [We] express no opinion concerning the extent, if any, to which an independent separation-of-powers challenge relating to provisions of Session Law 2017-6 governing the rotation of the office of chair of the Bipartisan State Board among the two largest political parties or the provisions of Session Law 2017-6 governing the [evenly divided] composition of the county boards of elections would have merit. *Id.* at 421, 809 S.E.2d at 116.

36.     North Carolina courts have held that *res judicata* does not bar a claim when the court in the prior action *refused to resolve* an issue presented by the parties, which is what the Supreme Court did in *Cooper*.

> See e.g., *Bockweg v. Anderson*, 333 N.C. 486, 492, 428 S.E.2d 157, 161 (1993) ("Where the second action between the same parties is upon a different claim, the prior judgment serves as a bar only as to the issues actually litigated and determined in the original action."); *Thomas M. McInnis & Associates, Inc. v. Hall*, 318 N.C. 421, 427, 349 S.E.2d 552, 556 (1986) (noting one purpose of *res judicata* is to prevent relitigation of "previously *decided* matters" (emphasis added)). So a prior proceeding where a court had denied a motion for moneys (sic) to be paid in the hands of receivers was not "an adjudication on the merits" when it "expressly left the merits of the matter open for future adjudication." *Whitmire v. First Fed.*

- 10 -

**EXHIBIT 3**

*Sav. & Loan Ass'n of Hendersonville*, 23 N.C. App. 39, 42, 208 S.E.2d 248,

250-51 (1974).

37. The "totality of the circumstance" consideration is the appropriate analysis to be employed by the Court, and this Court finds the new statute, Session Law 2018-2, alters the "totality of the circumstances" of the Acts.

38. For the foregoing reasons, this Court unanimously finds as fact and concludes as a matter of law that the doctrine of *res judicata* does not prevent Plaintiff from raising constitutional challenges for the first time in this action as to portions of the statute in effect at the time Plaintiff filed his previous lawsuit in 17-CVS-5084.

## B. <u>Structure of the State Board</u>

39. The Supreme Court has held that the State Board is primarily administrative or executive in character. *Cooper*, 370 N.C. at 415, 809 S.E.2d at 112; *see also, e.g.*, Session Law 2017-6, § 4(c) (enacting N.C. Gen. Stat. § 163A-5, which directs the State Board to "exercise its statutory powers, duties, functions, and authority and . . . have all powers and duties conferred upon the heads of principal departments under G.S. 143B‐10."); *State ex rel. Wallace v. Bone*, 304 N.C. 591, 608, 286 S.E.2d 79, 88 (1982) (finding it "crystal clear" that the Environmental Management Commission is an executive agency).

40. Part VIII of Session Law 2018-2 creates a nine-member Bipartisan State Board of Elections and Ethics Enforcement ("State Board"). As described in paragraph 10, four members must be appointed from a list of six candidates submitted to the Governor by the chair of the Republican Party and four must be appointed from a list of six candidates submitted to the Governor by the chair of the Democratic Party. The final member, an individual who is not a registered voter with the Democratic or Republican Party, must be appointed by the Governor from two names provided to the Governor by the other eight members of the State Board.

41. The Governor is not empowered to appoint a majority of the State Board. Instead he appoints four members that will reflect his views and priorities. An evenly split board—which

EXHIBIT 3

is the same structure held unconstitutional by *Cooper*—is tasked with nominating the potential ninth member of the board. This creates a scenario in which four members appointed by the chair of the political party opposed to the Governor have the power to disapprove any and even all such nominees until they comply with the policy views and priorities of the political party opposed to the Governor.

42.    The Governor may remove any member for any reason. However, for a majority of State Board members, the Governor does not have the ability to select replacements who will reflect his views and priorities.  Instead, for a majority of members of the State Board, the nominee to replace a removed member will reflect policy views and priorities of the political party opposed to the Governor.  This fails to provide the Governor with constitutionally sufficient removal power over the State Board.

43.    The Governor's inability to appoint a majority of State Board members who share his policy views and priorities, and to remove and replace a majority of members, substantially undermines his ability to ensure these policy views and priorities are implemented and effectuated.

44.    Applying *McCrory*, 368 N.C. 633 (2016) at 635, the Supreme Court in *Cooper* elaborated on the exact nature of executive control that our Constitution grants and reserves to the Governor, explaining:

> Although we did not explicitly define "control" for separation-of-powers purposes in *McCrory*, we have no doubt that the relevant constitutional provision, instead of simply contemplating that the Governor will have the ability to preclude others from forcing him or her to execute the laws in a manner to which he or she objects, also *contemplates that the Governor will have the ability to affirmatively implement the policy decisions that executive branch agencies subject to his or her control are allowed*, through delegation from the General Assembly, to make as well.

- 12 -

EXHIBIT 3

*Cooper*, 370 N.C. at 414–15 (emphasis added). Because the legislature structured the State Board to deprive the Governor of such control, the Court concluded that "the manner in which the membership of the Bipartisan State Board is structured and operates under Session Law 2017-6 impermissibly, facially, and beyond a reasonable doubt interferes with the Governor's ability to ensure that the laws are faithfully executed as required by Article III, Section 5(4) of the North Carolina." *Id.* at 418.

45.    *Cooper, McCrory,* and earlier precedent establish that there are two types of violations of the separation of powers, which occur " 'when one branch exercises power that the constitution vests exclusively in another branch' or 'when the actions of one branch prevent another branch from performing its constitutional duties.' " *Cooper*, 370 N.C. at 414, (quoting *McCrory*, 368 N.C. at 645); *see Ivarsson v. Office of Indigent Def. Servs.*, 156 N.C. App. 628, 631 (2003).

46.    The Acts violate the North Carolina Constitution in both ways. The General Assembly improperly exercises executive power through the legislative appointment of the Executive Director of the State Board, the chief state elections official vested with day-to-day supervisory powers over the enforcement of ethics, election, lobbying, and campaign finance laws. Moreover, the Acts interfere with the Governor's faithful execution of the laws by structuring the State Board in a manner that fails to ensure the Governor's "ability to affirmatively implement" executive policy decisions. *Cooper*, 370 N.C. at 415, 809 S.E.2d at 112.

47.    A majority of this Court finds as fact that the structure of the State Board as an individual provision and standing alone fails to provide the Governor with constitutionally sufficient control, and therefore it violates separation of powers and is thus unconstitutional.

**Judge Foster dissents from these findings, conclusions, and rulings.**

- 13 -

**EXHIBIT 3**

### Executive Director of the State Board

48.     Through the Acts, the General Assembly appoints the Executive Director of the State Board until at least May 2019.[2] Session Law 2017-6, § 17. Under the Acts, the Executive Director is the "chief State elections official" who is "responsible for staffing, administration, and execution of the State Board's decisions and orders." *See* Session Law 2017-6, § 4 (enacting §§ 163A-6(c) and (d)). Ms. Strach was initially hired by the SBOE on a 3-2 partisan vote following Governor McCrory's election and Governor McCrory's appointment of a majority Republican Board. *See* Deposition of Kimberly Westbrook Strach ("Strach Dep.") (Feb. 24, 2017) pp. 43-45.

49.     The State Board has the powers and duties of a principal department. Session Law 2017-6, § 4(c) (enacting N.C. Gen. Stat § 163A-5(a)). The Executive Director is a full-time employee who ensures completion of the day-to-day tasks necessary to enforce election, ethics, lobbying, and campaign finance laws. *Id.* (enacting § 163A-6). While the Acts only require the State Board to meet monthly, the Executive Director supervises, executes, and directs the enforcement of the State's elections, ethics, and campaign finance laws. *See id.* (enacting §§ 163A-3(a), 163A-6).

50.     The Acts grant the Executive Director significant authority. She is solely responsible for staffing, administers the State Board, and executes the board's decisions. *See id.* (enacting § 163A-6). She has the authority under certain circumstances (e.g., a hurricane) to exercise emergency powers and the authority, *on her own*, to adopt rules setting those powers. *See* N.C. Gen. Stat. § 163A-750.

51.     Among her other duties and discretionary powers, the Executive Director:

   • Provides "directives" to county boards of elections. *See* N.C. Gen. Stat. § 163A-1073; *see also, e.g., id.* N.C. Gen. Stat. § 163A-879 (regarding administrative changes in voter registration related to county boundaries).

---

[2] In *Cooper*, the Court squarely rejected Defendants' argument that Session Law 2017-6 simply "extended the term" of Ms. Strach, the legislature's selection to serve as State Board Executive Director. 370 N.C. at 419, 809 S.E.2d at 114.

- 14 -

EXHIBIT 3

• Provides opinions to candidates and political committees on campaign finance issues. If her opinion is followed, those candidates and committees are immune from prosecution. *See* N.C. Gen. Stat. § 163A-1441.

• Decides whether to retain or fire county directors of elections if a majority of a county board recommends termination—and she has the power to suspend such county directors unilaterally. N.C. Gen. Stat. § 163A-775.

• Approves county plans for out-of-precinct voting places, even though such plans must be unanimously adopted by the county board of elections. N.C. Gen. Stat. § 163A-1048.

• Approves county plans to temporarily use two voting places for the same precinct, even though such plans must be unanimously adopted by the county board of elections. N.C. Gen. Stat. § 163A-1049.

• Approves county plans to transfer voters from one precinct to an adjacent precinct. N.C. Gen. Stat. § 163A-1045(a).

• "[M]ay grant special permission for a county board of elections to enter into an agreement with the owners or managers of a nonpublic building to use the building as a voting place. . . ." if certain conditions are met. *See* N.C. Gen. Stat. § 163A-1134(c).

• "[M]ay permit a county board of elections to provide more than one type of voting system in a precinct, but only upon a finding that doing so is necessary to comply with federal or State law." N.C. Gen. Stat. § 163A-1119.

• Approves plans submitted by political campaign treasuries for goods or services sold by political parties. *See* N.C. Gen. Stat. § 163A-1415.

• Coordinates the North Carolina's "responsibilities under the National Voter Registration Act." *See* N.C. Gen. Stat. § 163A-861; *see also* N.C. Gen. Stat. § 163A-886 (registration of members of the military).

- 15 -

**EXHIBIT 3**

52.     The relevant statutes clearly grant the Executive Director substantial executive authority. Despite her executive role, she was given her authority and position by the General Assembly and cannot be replaced until May 2019 (at the earliest). *See* Session Law 2017-6, § 17. Measured in terms of the powers of appointment, supervision, and removal, we find as fact and conclude as a matter of law that the Executive Director: (1) was appointed by the legislature; (2) cannot be removed by the Governor or the State Board; and (3) accordingly, is not subject to supervision either directly by the Governor or indirectly by the State Board.[3] As the Supreme Court observed, Session Law 2017-6:

> limits the ability of persons who share the Governor's policy preferences to
> supervise the day-to-day activities of the Bipartisan State Board, at least in
> the short term, by ensuring that no one could be appointed to the position of
> Executive Director other than the General Assembly's appointee until May
> 2019. *Cooper v. Berger*, 370 N.C. at 416, 809 S.E.2d at 112.

In short, the Acts provide the Governor *with no control over the Executive Director of an executive agency*, violating separation of powers.

53.     The challenged provisions regarding the Executive Director, who is the State's chief elections official, thus violate separation of powers because: (a) the legislature directly appoints the Executive Director; (b) the legislature prohibits the State Board from removing the

---

[3] The *Cooper* Court observed that the legislature could not, within the limits of the North Carolina Constitution, "structure an executive branch commission in such a manner that the Governor is unable, *within a reasonable period of time*, to 'take care that the laws be faithfully executed' . . . " 370 N.C. at 418, 809 S.E.2d at 114 (emphasis added). The Supreme Court's observation recognizes that many executive boards and commissions are structured with staggered terms for their members and that, as a result, a newly elected Governor does not assume complete control of the entire executive branch the day he or she assumes the office. But within a reasonable time the Governor must have sufficient control because it is the Governor—not an appointed executive officer—who is politically accountable to the electorate.

In the present case, at the time this order is filed, the legislatively appointed Executive Director will have already served more than twenty-one months after Governor Cooper took office. Unless Section 17 of Session Law 2017-6 is invalidated, that Executive Director will continue to serve for more than twenty-nine months into Governor Cooper's term. This is not a "reasonable period of time" sufficient for the Governor to ensure faithful execution of the laws. N.C. CONST. art. III, § 5(4).

- 16 -

**EXHIBIT 3**

Executive Director for more than half of the Governor's four-year term of office; and (c) and, as a result, neither the Governor nor his appointees to the State Board have any power of supervision over the Executive Director. *See* Session Law 2017-6, § 17.

54.     Accordingly, this Court finds as fact and concludes as a matter of law the Acts' provisions regarding the Executive Director, as individual provisions and standing alone, violate the separation of powers clause of the State Constitution, and are unconstitutional.

## Structure and Chair of the County Boards of Elections

55.     Plaintiff has alleged that, with regard to the makeup and chairmanship appointment provisions for the County Boards of Election, the Governor's control is limited by the structure of the county boards of election, which consist of four members: two from the political party with the highest number of registered affiliates (Democratic Party) and two from the political party with the second highest number of registered affiliates (Republican Party).

56.     As recognized by the Supreme Court, the General Assembly has the authority to set the size of the county boards, *see Cooper*, 370 N.C. at 417, 809 S.E.2d at 113, and, notably, requiring that half of the members of a county board belong to a certain political party, is not, in and of itself, unconstitutional, *see id.* at n.13.

57.     Moreover, the members of the county boards are subject to supervision and removal by the Bipartisan State Board, *see, e.g.,* N.C. Gen. § 163A-741 (discussing oversight of county boards of election by Bipartisan State Board), whose members are subject to removal by the Governor.

58.     Additionally, the Governor has challenged the appointment of the Chair of the County Boards on the basis of the fact that there is a political test for the chair of the Board for every year that Presidential, gubernatorial, and Council of State elections are held. *See* Session Law 2018-2 § 8(b) (enacting § 163A-2(f)).

59.     There has been a political test for the Chair of County boards in place for many years. Prior to this series of legislative acts, the chair of the County boards was selected from the political party of the sitting governor, which is also a "political test."

- 17 -

EXHIBIT 3

60.     There was however, never in place a provision which could deprive one party of the Chairmanship of all County Boards of Election during every election year in which the Governor and the President were selected.

61.     This Court can see no other reason for such provision other than to place one political party in control of the Chair of the County Boards at the most critical election times.

62.     In evaluating this provision under the separation of powers analysis set forth above, there is no circumstance under which the deprivation of one party's opportunity to ever chair a county board of elections during the year of a major election can be constitutional, in that it will have an impact on the opposing party Governor's ability to see that the election laws are faithfully executed in the manner deemed by that Governor to be necessary and appropriate under the laws as they exist.

63.     The Governor has met his burden in the facial challenge with regard to the Chairmanships of the County Boards.

64.     With regard to the makeup of the county boards, the supervision from the State level over the actions and disputes at the county level is sufficient so as to insure that the Governor has sufficient control to see that the election laws are faithfully executed at the county level.

65.     The Governor has not met his burden in a facial challenge of the makeup of the county boards.

66.     Therefore, it is the Ruling of this Court that the provisions in Session Law 2017-6 are Unconstitutional with regard to the partisan requirements for the Chairman of the County Boards of Election, and are Constitutional as to the makeup of the county boards. Notwithstanding the finding of constitutionality as to the makeup of the county boards, that in and of itself is not sufficient to render the act Constitutional.

EXHIBIT 3

### Chair of the State Board

67.     Plaintiff also argues that his control is limited because he has no authority to appoint the chairs of the Bipartisan State Board[4] or the county boards and because the chair during major election years (i.e., presidential and gubernatorial election years) must be a member of the party with the second highest number of registered affiliates (currently, the Republican party)

68.     The Defendants argue that the powers of the chair of the Bipartisan State Board are limited. *See, e.g.,* N.C. Gen. Stat. §§ 163A-3(a) (chair or a majority of members may call a meeting); 163A-4(a)-(b) (chair or vice chair may sign and issue subpoenas, summon witnesses, and compel production of documents); 163A-4(c) (chair or any member may administer oaths). Because of these limited powers, and because under Session Law 2018-2, the Governor has unfettered removal power as a check on the members of the Bipartisan State Board, that this constitutes sufficient control over such members and the Bipartisan State Board as a whole.

69.     The Plaintiff argues that the Acts impose a political test for the chair of the State Board for every year that Presidential, gubernatorial, and Council of State elections are held. *See* Session Law 2018-2 § 8(b) (enacting § 163A-2(f)). This would in effect insure that one party controls the Chairmanship of the State Board each year that the Governor and President are elected, regardless of the political affiliation of the Governor.

70.     There has always been a "political test" for the chair of the State Board. It traditionally has gone to the party of the sitting Governor. That system has been in place and functioned for years.

71.     There was however, never in place a provision which could deprive one party of the Chair of the State Board during every election year in which the Governor and the President were selected.

---

[4] As acknowledged by Plaintiff, the Governor does appoint the first chair of the Bipartisan State Board, but the members select their own chair thereafter.  S.L. 2017-6, § 10.

- 19 -

**EXHIBIT 3**

72.     This Court can see no other reason for such provision other than to place one political party in control of the Chair of the State Board at the most critical election times.

73.     Again, in evaluating this provision under the separation of powers analysis set forth above, there is no circumstance under which the deprivation of one party's opportunity to ever chair the State Board during the year of a major election can be constitutional, in that it will have an impact on the opposing party Governor's ability to see that the election laws are faithfully executed in the manner deemed by that Governor to be necessary and appropriate under the laws as they exist.

74.     The Governor has met his burden with regard to the facial challenge to the constitutionality of this provision.

It is therefore the Ruling of the Court that the provision in Session Law 2018-2 with regard to the political party requirement of the Chair of the State Board is Unconstitutional.

## The Entirety of the Challenged Acts

75.     In addition to challenging that four individual provisions of the Act, individually and standing alone, violate our State Constitution, Plaintiff has also alleged that when all of those provisions are examined collectively, the Acts viewed as a whole and in their entirety unconstitutionally violate the separation of powers clause of our Constitution.

76.     With respect to the Governor's powers of appointment: (a) for more than half the members of the State Board (i.e., those nominated directly or indirectly by the party different from the Governor), the Governor's appointment authority is significantly constrained, Session Law 2018-2, § 8(b) (enacting N.C. Gen. Stat. §§ 163A-2(a),(a1)); Session Law 2017-6, § 4(c) (enacting N.C. Gen. Stat. § 163A-3, -4); (b) for both initial and vacancy appointments, the Governor lacks the authority to reject any slate of nominees provided by either political party, *see id.* (enacting § 163A-2(d)); and (c) the legislature, and not the Governor, appoints the Executive Director who will serve more than 29 months into the Governor's 48-month term if the Acts are not enjoined.

77.     With respect to the Governor's powers of removal: (a) the Acts prevent the removal of the Executive Director of the State Board until May 2019 and after that date only permit her

- 20 -

EXHIBIT 3

removal "for cause," *see* 2017-6, §§ 17, 4(c); (b) while the Governor may remove any member of the State Board for any reason, such removal power is constitutionally insufficient, because the Governor does not have the right, for a majority of members, to select replacements who will reflect his views and priorities. Instead, the nominees to replace a majority of removed members will reflect the policy views and priorities of the political party opposed to the Governor; and (c) the Governor has no direct power to remove members of county boards of elections, who may only be removed indirectly by the State Board, which a majority of this Court finds and concludes is not subject to sufficient control by the Governor, and only remove them for cause.

78.     With respect to the Governor's powers of supervision: (a) the Acts legislatively appoint the Executive Director of the State Board and forbid her removal until 29 months into the Governor's term of office; (b) the Acts prevent the Governor from appointing a majority of members to the State Board that will reflect his views and priorities; (c) county boards of election are chaired during every even-numbered election year by a member of the political party opposed to the Governor; and (d) the State Board is chaired in every year that Presidential, gubernatorial, and Council of State elections are held by a member of the political party opposed to the Governor.

79.     A majority of this Court finds as fact and concludes as a matter of law that when analyzed collectively and in their entirety, all of the foregoing provisions combine to strip the Governor of the requisite control mandated by *Cooper* and *McCrory*, and that the Acts thus prevent the Governor from fulfilling his core duty of taking care that the State's election laws are faithfully executed.

80.     Accordingly, a majority of this Court finds and concludes that the Acts as a whole violate the separation of powers guaranteed by the North Carolina Constitution, and are therefore unconstitutional.

**Judge Foster dissents from these findings, conclusions, and rulings.**

## CONCLUSION

**It is therefore ORDERED, ADJUDGED, AND DECREED that:**

81.     Defendant's Motion to Dismiss is denied;

- 21 -

EXHIBIT 3

82.    Plaintiff's Motion for Summary Judgment is granted;

83.    By reason of the Court finding as fact and concluding as law that the challenged Acts in their entirety are unconstitutional, and pursuant to N.C. Gen. Stat. § 1-253 *et seq.* and North Carolina Rule of Civil Procedure 57, the Court hereby enters final judgment:

   a.    Declaring that Part VIII of Session Law 2018-2 (House Bill 90) is unconstitutional and therefore void and of no effect.

   b.    Declaring that Section 17 of Session Law 2017-6 is unconstitutional and therefore void and of no effect.

   c.    Declaring that Section 7 (H) of Session Law 2017-6 is unconstitutional and therefore void and of no effect.

   d.    Declaring that Sections 7 (H) of Session Law 2017-6 and Section 8 (b) of Session Law 2018-2 (House Bill 90) are unconstitutional and therefore void and of no effect.

   e.    Permanently enjoining Part VIII of Session Law 2018-2 in its entirety, and sections 3 through 22 of Session Law 2017-6 in their entirety.

84.    In light of the upcoming November 2018 elections and in the exercise of this Court's authority pursuant to North Carolina Rule of Civil Procedure 62(c), this Court hereby suspends its injunction against those portions of Section 8 (b) of Session Law 2018-2 that enact N.C. Gen. Stat. § 163A-2(a) to (e), in order to allow the current State Board (composed of nine (9) members) to continue its service during the November 2018 elections. The suspension of this injunction shall remain in place until the results of the November 2018 elections are certified by the State Board.

85.    The parties shall bear their own costs.

**WHEREFORE, IT IS HEREBY SO ORDERED, ADJUDGED, AND DECREED.**

**EXHIBIT 3**

SO ORDERED, this the 16 day of October, 2018.

The Honorable Jesse B. Caldwell, III

**EXHIBIT 3**

SO ORDERED, this the _16th_ day of October, 2018.


The Honorable L. Todd Burke

**EXHIBIT 3**

SO ORDERED, this the _16th_ day of October, 2018.

The Honorable Jeffery B. Foster

- 25 -

**EXHIBIT 3**

**Judge Foster dissenting:**

I dissent from the decision of my learned colleagues due to my belief that the issues in the case at bar are nonjusticiable political questions, and under the political question doctrine, cannot and should not be addressed by this court. I adopt the dissent of Justice Newby in the previous Berger case to support my dissent here. *Cooper v. Berger,* 809 S.E. 2d 98, 119-128 (2018).

In the spirit of the previous Berger case, wherein the Supreme Court asked this panel to address the principal issue there, notwithstanding our finding that we had no jurisdiction to consider what we initially held to be a non-justiciable political question, I would further hold that the Plaintiff has once again failed to meet the standard of proof that this act of the Legislature is facially unconstitutional with regard to the makeup of the State Board of Elections and Ethics Enforcement.

In reviewing legislation, the North Carolina Supreme Court:

"reviews acts of the state legislature with great deference; a statute cannot be declared unconstitutional under the State Constitution unless that Constitution clearly prohibits the statute."……"[A] statute will not be declared unconstitutional unless this conclusion is so clear that no reasonable doubt can arise, or the statute cannot be upheld on any reasonable ground." *Crump v. Sneed,* 134 N.C. App. 353, 355 (1989) (citations omitted).

The Supreme Court has further determined:

An individual challenging the facial constitutionality of a legislative act must determine that no set of circumstances exist under which the act would be valid. The fact that a statute "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *State v. Bryant,* 359 N.C. 554, 564 (2005) (citations omitted).

The Supreme Court, after its decision in *Berger*, reaffirmed this standard for facial challenges in *N.C. State Bd. Of Educ. v. State,* No.333PA17, slip opinion at 16-17 (N.C. June 8, 2018). While the Governor argues that the standard for a facial challenge in a separation of powers dispute was changed by the previous Berger decision, the Supreme Court did not go so far as to state that in its holding in *Berger*.

- 26 -

**EXHIBIT 3**

Because of the long line of precedent establishing the standard for a facial constitutional challenge, further supported by the Supreme Court's reiteration of that standard as early as June 8th of this year, I am of the opinion that the standard remains the same as was set out in *State v. Bryant*. Applying the standard set out in *State v. Bryant* to this case, I do not believe that the Governor has met this standard in his challenge to the facial constitutionality of the State Board of Election and Ethics Enforcement.

I therefore dissent from the decision of the panel with regard to the facial constitutionality of the State Board of Election and Ethics Enforcement. I join with my colleagues in the decision on the remaining issues, notwithstanding my position under the political question doctrine.

**EXHIBIT 3**

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that the foregoing document was served on all parties by serving counsel as indicated below by U.S. Mail, postage prepaid, addressed as follows:

  Jim W. Phillips, Jr.
  Eric M. David
  Daniel F.E. Smith
  BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP
  Suite 2000 Renaissance Plaza
  230 North Elm Street
  Greensboro, NC 27401
  jphillips@brookspierce.com
  edavid@brookspierce.com
  dsmith@brookspierce.com

  Noah H. Huffstetler, III
  D. Martin Warf
  NELSON MULLINS RILEY & SCARBOROUGH, LLP
  GlenLake One, Suite 200
  4140 Parklake Avenue
  Raleigh, NC 27612
  Noah.Huffstetler@nelsonmullins.com
  Martin.Warf@nelsonmullins.com

This the 17th day of October, 2018.

            _____
            Kellie Z. Myers
            Wake County Trial Court Administrator
            PO Box 1916
            Raleigh, NC 27602
            Kellie.Z.Myers@nccourts.org