# EXHIBIT 4

**EXHIBIT 4**

**GENERAL ASSEMBLY OF NORTH CAROLINA**
**SESSION 2017**

**SESSION LAW 2018-146**
**HOUSE BILL 1029**

AN ACT TO REQUIRE A PRIMARY IF A NEW ELECTION IS ORDERED IN ANY ELECTION CONTEST; TO RETURN THE ADMINISTRATIVE STRUCTURE OF ELECTIONS, ETHICS, AND LOBBYING TO THE 2016 STRUCTURE; AND TO MAKE OTHER CHANGES TO THE ELECTIONS, ETHICS, AND LOBBYING LAWS.

The General Assembly of North Carolina enacts:

**PART I. REQUIRE PRIMARY FOR NEW ELECTION**
        **SECTION 1.** G.S. 163-182.13 is amended by adding a new subsection to read:
    "(g)    Primary Required for a New Election. – For any new congressional general election ordered under subsection (a) of this section, a primary for that election shall be conducted. The State Board shall determine when the primary shall be held, and shall set the schedule for publication of the notice, preparation of absentee official ballots, and the other actions necessary to conduct the primary."

**PART II. DELAY EFFECTIVE DATE PART I OF SB 824, 2017 REGULAR SESSION**
        **SECTION 2.** If Senate Bill 824, 2017 Regular Session, becomes law, then Part I of that act shall not apply to any new election ordered under G.S. 163A-1181 in a 2018 election contest.

**PART III. ELECTIONS, ETHICS, AND LOBBYING**
        **SECTION 3.1.(a)** The Revisor of Statutes is authorized to re-recodify Chapter 163A of the General Statutes back into Chapters 163, 138A, and 120C of the General Statutes. In preparing the re-recodified chapters, the Revisor of Statutes shall revert the changes made by the Revisor pursuant to Section 3 of S.L. 2017-6, except that after consultation with the appropriate agency staff, the Revisor may separate subsections of statutory sections that existed in the former Chapters into new sections and, when necessary to organize relevant law into its proper place in the re-recodified chapters, may rearrange sentences that appeared within those subsections. The Revisor shall also incorporate into the re-recodified chapters all amendments to Chapters 163, 163A, 138A, and 120C that became effective on or after April 25, 2017, other than those made by S.L. 2017-6 or by Part VIII of S.L. 2018-2.
        **SECTION 3.1.(b)** Sections 3 through 21 of S.L. 2017-6 are repealed.
        **SECTION 3.1.(c)** Part VIII of S.L. 2018-2 is repealed.
        **SECTION 3.1.(d)** G.S. 163A-2 is repealed.
        **SECTION 3.2.(a)** G.S. 163-19, as re-recodified by this act, is rewritten to read:
"**§ 163-19.  State Board of Elections; appointment; term of office; vacancies; oath of office.**
    (a)    There is established the State Board of Elections, which may be referred to as the "State Board" in this Chapter.
    (b)    The State Board of Elections shall consist of five registered voters whose terms of office shall begin on May 1, 2019, and shall continue for four years, and until their successors are appointed and qualified. The Governor shall appoint the members of the State Board and likewise shall appoint their successors every four years at the expiration of each four-year term.

EXHIBIT 4

Not more than three members of the State Board shall be members of the same political party. The Governor shall appoint the members from a list of nominees submitted to the Governor by the State party chair of each of the two political parties having the highest number of registered affiliates as reflected by the latest registration statistics published by the State Board. Each party chair shall submit a list of four nominees who are affiliated with that political party. No person may serve more than two consecutive four-year terms.

(c)     Any vacancy occurring in the State Board shall be filled by the Governor, and the person so appointed shall fill the unexpired term. The Governor shall fill the vacancy from a list of three nominees submitted to the Governor by the State party chair of the political party that nominated the vacating member as provided in subsection (b) of this section. The three nominees must be affiliated with that political party.

(d)     At the first meeting held after new appointments are made, the members of the State Board shall take the following oath:

"I, _____, do solemnly swear (or affirm) that I will support the Constitution of the United States; that I will be faithful and bear true allegiance to the State of North Carolina, and to the constitutional powers and authorities which are or may be established for the government thereof; that I will endeavor to support, maintain, and defend the Constitution of said State, and that I will well and truly execute the duties of the office of member of the State Board of Elections according to the best of my knowledge and ability, according to law, so help me God."

(e)     After taking the prescribed oath, the State Board shall organize by electing one of its members chair and another secretary.

(f)     No person shall be eligible to serve as a member of the State Board who:

(1)     Holds any elective or appointive office under the government of the United States, the State of North Carolina, or any political subdivision thereof.

(2)     Is a candidate for nomination or election to any office.

(3)     Holds any office in a political party or organization.

(4)     Is a campaign manager or treasurer of any candidate in a primary or election.

(5)     Is currently an employee of the State, a community college, or a local school administrative unit.

(6)     Within the 48 months prior to appointment, has held any of the following positions with an organization that has engaged in electioneering in those 48 months:

a.     Director, officer, or governing board member.

b.     Employee.

c.     Lobbyist registered under Chapter 120C of the General Statutes.

d.     Independent contractor.

e.     Legal counsel of record.

(g)     No person while serving on the State Board shall:

(1)     Make a reportable contribution to a candidate for a public office over which the State Board would have jurisdiction or authority.

(2)     Register as a lobbyist under Chapter 120C of the General Statutes.

(3)     Make written or oral statements intended for general distribution or dissemination to the public at large supporting or opposing the nomination or election of one or more clearly identified candidates for public office.

(4)     Make written or oral statements intended for general distribution or dissemination to the public at large supporting or opposing the passage of one or more clearly identified referendum or ballot issue proposals.

(5)     Solicit contributions for a candidate, political committee, or referendum committee.

(6)     Serve as a member of any other State board, as defined in G.S. 138A-3."

EXHIBIT 4

**SECTION 3.2.(b)**  G.S. 163-21, as re-recodified by this act, is rewritten to read:
"**§ 163-21.  Compensation of Board members.**
 Members of the State Board shall receive per diem, subsistence, and travel, as provided in G.S. 138-5 and G.S. 138-6."

**SECTION 3.2.(c)**  G.S. 163-23, as re-recodified by this act, is rewritten to read:
"**§ 163-23.  Powers of chair in execution of Board duties.**
 In the performance of the duties enumerated in this Chapter, the Chair of the State Board shall have power to administer oaths, issue subpoenas, summon witnesses, and compel the production of papers, books, records, and other evidence. Upon the written request or requests of two or more members of the State Board, the Chair shall issue subpoenas for designated witnesses or identified papers, books, records, and other evidence. In the absence of the Chair or upon the Chair's refusal to act, any two members of the State Board may issue subpoenas, summon witnesses, and compel the production of papers, books, records, and other evidence. In the absence of the Chair or upon the Chair's refusal to act, any member of the State Board may administer oaths."

**SECTION 3.2.(d)**  G.S. 163-26, as re-recodified by this act, is rewritten to read:
"**§ 163-26.  Executive Director of State Board of Elections.**
 There is hereby created the position of Executive Director of the State Board, who shall perform all duties imposed by statute and such duties as may be assigned by the State Board."

**SECTION 3.2.(e)**  G.S. 163-27, as re-recodified by this act, is rewritten to read:
"**§ 163-27.  Executive Director to be appointed by State Board.**
 (a)      The State Board shall appoint an Executive Director for a term of two years with compensation to be determined by the Office of State Human Resources.
 (b)      The Executive Director shall serve beginning May 15 after the first meeting held after new appointments to the State Board are made, unless removed for cause, until a successor is appointed.
 (c)      The Executive Director shall be responsible for staffing, administration, and execution of the State Board's decisions and orders and shall perform such other responsibilities as may be assigned by the State Board.
 (d)      The Executive Director shall be the chief State elections official."

**SECTION 3.2.(f)**  G.S. 163-28, as re-recodified by this act, reads as rewritten:
"**§ 163-28.  State Board of Elections independent agency.**
 The State Board of Elections ~~shall be and remain an independent regulatory and quasi-judicial agency and~~ shall not be placed within any principal administrative department. The State Board shall exercise its statutory powers, duties, functions, and authority and shall have all powers and duties conferred upon the heads of principal departments under G.S. 143B-10."

**SECTION 3.3.(a)**  G.S. 138A-6, as re-recodified by this act, is rewritten to read:
"**§ 138A-6.  State Ethics Commission established.**
 There is established the State Ethics Commission."

**SECTION 3.3.(b)**  G.S. 138A-7, as re-recodified by this act, is rewritten to read:
"**§ 138A-7.  Membership.**
 (a)      The Commission shall consist of eight members. Four members shall be appointed by the Governor, of whom no more than two shall be of the same political party. Four members shall be appointed by the General Assembly, two upon the recommendation of the Speaker of the House of Representatives, neither of whom shall be of the same political party, and two upon the recommendation of the President Pro Tempore of the Senate, neither of whom shall be of the same political party. Members shall serve for four-year terms, beginning January 1, 2019, except for the initial terms that shall be as follows:
  (1)      Two members appointed by the Governor shall serve an initial term of one year.

EXHIBIT 4

(2) Two members appointed by the General Assembly, one upon the recommendation of the Speaker of the House of Representatives and one upon the recommendation of the President Pro Tempore of the Senate, shall serve initial terms of two years.

(3) Two members appointed by the Governor shall serve initial terms of three years.

(4) Two members appointed by the General Assembly, one upon the recommendation of the Speaker of the House of Representatives and one member upon the recommendation of the President Pro Tempore of the Senate, shall serve initial terms of four years.

(b) Members shall be removed from the Commission only for misfeasance, malfeasance, or nonfeasance. Members appointed by the Governor may be removed by the Governor. Members appointed by the General Assembly upon the recommendation of the Speaker of the House of Representatives shall be removed by the Governor upon the recommendation of the Speaker. Members appointed by the General Assembly upon the recommendation of the President Pro Tempore of the Senate shall be removed by the Governor upon the recommendation of the President Pro Tempore of the Senate.

(c) Vacancies in appointments made by the Governor shall be filled by the Governor for the remainder of any unfulfilled term. Vacancies in appointments made by the General Assembly shall be filled in accordance with G.S. 120-122 for the remainder of any unfulfilled term.

(d) No member while serving on the Commission or employee while employed by the Commission shall:

(1) Hold or be a candidate for any other office or place of trust or profit under the United States, the State, or a political subdivision of the State.

(2) Hold office in any political party above the precinct level.

(3) Participate in or contribute to the political campaign of any covered person or any candidate for a public office as a covered person over which the Commission would have jurisdiction or authority.

(4) Otherwise be an employee of the State, a community college, or a local school administrative unit, or serve as a member of any other State board.

(e) No individual is eligible to serve on the Commission who, within the 48 months prior to appointment, has held any of the following positions with an organization that has engaged in electioneering in those 48 months:

(1) Director, officer, or governing board member.

(2) Employee.

(3) Lobbyist registered under Chapter 120C of the General Statutes.

(4) Independent contractor.

(5) Legal counsel of record.

(f) The Governor shall annually appoint a member of the Commission to serve as chair of the Commission. The Commission shall elect a vice-chair annually from its membership. The vice-chair shall act as the chair in the chair's absence or if there is a vacancy in that position.

(g) Members of the Commission shall receive no compensation for service on the Commission but shall be reimbursed for subsistence, travel, and convention registration fees as provided under G.S. 138-5 or G.S. 138-7, as applicable.

(h) No individual may serve more than two consecutive four-year terms."

**SECTION 3.3.(c)** G.S. 138A-8, as re-recodified by this act, is rewritten to read:

"**§ 138A-8. Meetings and quorum.**

The Commission shall meet at least quarterly and at other times as called by its chair or by four of its members. In the case of a vacancy in the chair, meetings may be called by the vice-chair. Five members of the Commission constitute a quorum."

**SECTION 3.3.(d)** G.S. 138A-9, as re-recodified by this act, is rewritten to read:

Case 3:19-cv-00226-RJC-DSC Document 8-4 Filed 06/07/19 Page 5 of 31

EXHIBIT 4

"**§ 138A-9.  Staff and offices.**

(a)      The Commission may employ professional and clerical staff, including an executive director.

(b)      The Commission shall be located within the Department of Administration for administrative purposes only, but shall exercise all of its powers, including the power to employ, direct, and supervise all personnel, independently of the Secretary of Administration, and is subject to the direction and supervision of the Secretary of Administration only with respect to the management functions of coordinating and reporting. The Department shall provide administrative support to the Commission free of charge."

**SECTION 3.3.(e)**  G.S. 138A-12(r), as re-recodified by this act, is rewritten to read:

"(r)      Subpoena Authority. – The Commission may petition the Superior Court of Wake County for the approval to issue subpoenas and subpoenas duces tecum as necessary to conduct investigations of alleged violations of this Chapter. The court shall authorize subpoenas under this subsection when the court determines the subpoenas are necessary for the enforcement of this Chapter. Subpoenas issued under this subsection shall be enforceable by the court through contempt powers. Venue shall be with the Superior Court of Wake County for any person or governmental unit covered by this Chapter, and personal jurisdiction may be asserted under G.S. 1-75.4."

**SECTION 3.4.(a)**  The authority, powers, duties and functions, records, personnel, property, and unexpended balances of appropriations, allocations, or other funds, including the functions of budgeting and purchasing, of the ethics compliance and enforcement functions of the Bipartisan State Board of Elections and Ethics Enforcement are transferred as a Type II transfer to the State Ethics Commission as re-recodified in this act. Specifically, the following positions shall be transferred: Administrative Assistant III (Position 60088563), Attorney Supervisor I (Position 60088564), Office Assistant V (Position 60088565), Administrative Assistant II (Position 60088566), Attorney II (Position 60088567), Administrative Assistant II (Position 60088568), Attorney II (Position 60088570), Disclosure Manager (Position 65012029), Compliance Analyst I (Position 65012032), and Compliance Analyst I (Position 65019901).

**SECTION 3.4.(b)**  The authority, powers, duties and functions, records, personnel, property, and unexpended balances of appropriations, allocations, or other funds, including the functions of budgeting and purchasing, of the lobbying registration and lobbying enforcement functions of the Bipartisan State Board of Elections and Ethics Enforcement are transferred as a Type I transfer to the Secretary of State as re-recodified in this act. Specifically, the following positions shall be transferred: Administrative Assistant II (Position 60088203), Administrative Assistant II (Position 60088204), Administrative Assistant II (Position 60088218), Attorney II (Position 60008800), and Administrative Specialist II (Position 60008803).

**SECTION 3.4.(c)**  The authority, powers, duties and functions, records, personnel, property, and unexpended balances of appropriations, allocations, or other funds, including the functions of budgeting and purchasing, of the elections and campaign finance functions of the Bipartisan State Board of Elections and Ethics Enforcement are transferred as a Type II transfer to the State Board of Elections as re-recodified in this act. Specifically, the following positions shall be transferred: Executive Director (Position 60088197), Elections Investigator (Position 60088201), Senior Elections Specialist (Position 60088207), Director of Election Operations (Position 60088209), Associate General Counsel, Elections (Position 60088211), Elections Support Technician (Position 60088212), Auditor (Position 60088199), Deputy Director/Chief Operating Officer (Position 60088200), Compliance and Disclosure Manager (Position 60088205), Elections Specialist (Position 60088206), Office Assistant III (Position 60088215), Business And Technology Applic Tech (Position 60088232), Auditor (Position 60088252), Auditor (Position 60088254), Elections Specialist III (Position 60088256), Elections Specialist III (Position 60088257), Chief Investigator (Position 60088259), Accounting and HR Specialist (Position 65005659), Auditor (Position 65005661), HR Director (Position 65005663), Senior

EXHIBIT 4

Elections Investigator (Position 65022162), Elections Investigator (Position 65022163), Elections Investigator (Position 65022164), Agency General Counsel (Position 60088198), Software Tester (Position 60088202), Elections Specialist I (Position 60088208), Disclosure Specialist (Position 60088213), Software Tester (Position 60088216), Auditor (Position 60088217), Information Technology Director (Position 60088219), Database Administrator (Position 60088220), Senior Business System Analyst (Position 60088221), Business And Technology Applic Tech (Position 60088222), Business And Technology Applic Tech (Position 60088223), Business And Technology Applic Tech (Position 60088224), Operations Analyst (Position 60088227), Senior Elections Specialist (Position 60088228), Elections Systems Specialist (Position 60088229), Business And Technology Applic Analyst (Position 60088233), Database Administrator (Position 60088234), Business And Technology Applic Analyst (Position 60088235), Systems Program Analyst (Position 60088237), Elections Systems Specialist (Position 60088239), Elections Systems Specialist (Position 60088240), Information Technology Manager (Position 60088241), Information Technology Manager (Position 60088242), GIS Specialist (Position 65005664), Elections Systems Specialist (Position 65005665), Software Lead Developer (Position 65021730), Systems/Programmer Analyst (Position 65021731), Public Information Officer (Position 65020532), Chief Learning Officer (Position 65020533), Elections Specialist I (Position 65020534), Elections Specialist I (Position 65020535), Elections Specialist I (Position 65020536), Deputy General Counsel (Position 65021570), Chief Data Officer (Position 65021571), Administrative Specialist II (Position 60008801), Administrative Specialist II (Position 60008802), Executive Assistant (Position 60008806), Attorney II (Position 60088571), Attorney II (Position 65005579), Compliance Analyst I (Position 65012030), Voting Systems Manager (Position 65019619), Advanced Data Analyst (Position 65027807), Advanced Data Analyst (Position 65027808), and Chief Information Security Officer (Position 65027809).

**SECTION 3.4.(d)** The Director of the Budget shall resolve any disputes arising out of the transfers provided for in this section.

**SECTION 3.5.(a)** Any previous assignment of duties of a quasi-legislative or quasi-judicial nature by the Governor or General Assembly to the agencies or functions transferred by this act shall have continued validity with the transfer under this act. Except as otherwise specifically provided in this act, each enumerated commission, board, or other function of State government transferred from the Bipartisan State Board of Elections and Ethics Enforcement, as created in S.L. 2017-6 and S.L. 2018-2, is a continuation of the former entity for purposes of succession to all the rights, powers, duties, and obligations of the former. Where the Bipartisan State Board of Elections and Ethics Enforcement is referred to by law, contract, or other document in lieu of the former entities, as re-recodified in this act, the former entity, as re-recodified by this act, is charged with exercising the functions of the former named entity.

**SECTION 3.5.(b)** No action or proceeding pending on January 31, 2019, brought by or against the Bipartisan State Board of Elections and Ethics Enforcement shall be affected by any provision of this act, but the same may be prosecuted or defended in the name of the Secretary of State regarding the lobbyist registration and lobbying enforcement of the Secretary of State, the State Board of Elections, or the State Ethics Commission, as re-recodified in this act. In these actions and proceedings, the former entity, as re-recodified by this act, as appropriate, shall be substituted as a party upon proper application to the courts or other administrative or quasi-judicial bodies.

Any business or other matter undertaken or commanded by any State program or office or contract transferred by this act to the former entity, as re-recodified by this act, pertaining to or connected with the functions, powers, obligations, and duties set forth herein, which is pending on January 31, 2019, may be conducted and completed by the former entity, as re-recodified by this act, in the same manner and under the same terms and conditions and with

EXHIBIT 4

the same effect as if conducted and completed by the Bipartisan State Board of Elections and Ethics Enforcement.

**SECTION 3.5.(c)** The reorganization provided for under this act shall not affect any ongoing investigation or audit. Any ongoing hearing or other proceeding before the Bipartisan State Board of Elections and Ethics Enforcement on January 31, 2019, shall be transferred to the former entity, as re-recodified by this act, on January 31, 2019. Prosecutions for offenses or violations committed before January 31, 2019, are not abated or affected by this act, and the statutes that would be applicable but for this act remain applicable to those prosecutions.

**SECTION 3.5.(d)** Rules adopted by the Bipartisan State Board of Elections and Ethics Enforcement shall remain in effect as provided in G.S. 150B-21.7. Policies, procedures, and guidance shall remain in effect until amended or repealed by the appropriate former entity, as re-recodified by this act. The list of covered boards adopted by the State Ethics Commission under G.S. 138A-11 as of December 31, 2016, as amended by the Bipartisan State Board of Elections and Ethics Enforcement, shall continue in effect until amended or repealed by the former entity, as re-recodified by this act.

**SECTION 3.5.(e)** Any evaluation of a statement of economic interest issued by the Bipartisan State Board of Elections and Ethics Enforcement pursuant to Article 6 of Chapter 163A of the General Statutes in 2017 or 2018 shall remain in effect until amended or repealed by the former entity, as re-recodified by this act.

**SECTION 3.6.** This Part becomes effective January 31, 2019.

# PART IV. CHANGES

**SECTION 4.1.(a)** G.S. 120C-100(a)(13) is repealed.

**SECTION 4.1.(b)** G.S. 120C-215 is repealed.

**SECTION 4.1.(c)** G.S. 120C-401(f) and (h), as re-recodified by this act, reads as rewritten:

"(f)    Failure to file a required report in one of the manners prescribed in this section shall void any and all registrations of the ~~lobbyist, lobbyist principal, or solicitor.~~lobbyist or lobbyist principal. No ~~lobbyist, lobbyist principal, or solicitor~~lobbyist or lobbyist principal may register or reregister until full compliance with this section has occurred.

…

(h)    The Secretary of State may adopt rules to facilitate complete and timely disclosure of required reporting, including additional categories of information, and to protect the addresses of payees under protective order issued pursuant to Chapter 50B of the General Statutes or participating in the Address Confidentiality Program pursuant to Chapter 15C of the General Statutes. The Secretary of State shall not impose any penalties or late filing fees upon a ~~lobbyist, lobbyist principal, or solicitor~~lobbyist or lobbyist principal for subsequent failures to comply with the requirements of this section if the Secretary of State failed to provide the required notification under subsection (e) of this section."

**SECTION 4.1.(d)** G.S. 120C-402(b)(2) is repealed.

**SECTION 4.1.(e)** G.S. 120C-403(b)(2) is repealed.

**SECTION 4.1.(f)** G.S. 120C-404 is repealed.

**SECTION 4.2.(a)** G.S. 138A-12(b), as re-recodified by this act, reads as rewritten:

"(b)    Institution of Proceedings. – On its own motion, in response to a signed and ~~sworn~~ sworn, under oath or affirmation, complaint of any ~~individual~~ registered voter filed with the State Board, or upon the written request of any public servant or those responsible for the hiring, appointing, or supervising of a public servant, the State Board shall conduct an inquiry into any of the following:

(1)    The application or alleged violation of this Subchapter.

(2)    For legislators, the application or alleged violations of Part 1 of Article 14 of Chapter 120 of the General Statutes.

EXHIBIT 4

      (3)     An alleged violation of the criminal law by a covered person in the performance of that individual's official duties.

      (4)     An alleged violation of G.S. 126-14.

Upon receipt of a referral under G.S. 147-64.6B or a report under G.S. 147-64.6(c)(19), the State Board may conduct an inquiry under this section on its own motion. Allegations of violations of the Code of Judicial Conduct shall be referred to the Judicial Standards Commission without investigation."

**SECTION 4.2.(b)** G.S. 163-278.22(7), as re-recodified by this act, reads as rewritten:

"(7)     To make investigations to the extent the State Board deems necessary with respect to statements filed under the provisions of this Article and with respect to alleged failures to file any statement required under the provisions of this Article or Article 26 of ~~[of this Chapter]~~this Chapter of the General Statutes and, upon ~~complaint~~ complaint, signed and sworn under oath or affirmation, by any registered voter, with respect to alleged violations of any part of this Article or Article 26 ~~[this Chapter of]~~of this Chapter of the General Statutes. All investigations shall be confidential, and no investigation shall be initiated more than four years from the earliest of the following dates:

      a.     The facts constituting the violation are known to the State Board or county board with jurisdiction.

      b.     The facts constituting the violation can be determined from the public record.

      c.     The complainant knew or should have known of the conduct upon which the complaint is based."

**SECTION 4.2.(c)** G.S. 120-103.1(a) reads as rewritten:

"(a)     Institution of Proceedings. – On its own motion, upon receipt by the Committee of a signed and ~~sworn~~ sworn, under oath or affirmation, allegation of unethical conduct by a ~~legislator,~~legislator from a registered voter or upon receipt of a referral of a complaint from the Bipartisan State Board of Elections and Ethics Enforcement under Articles 5, 6, 7, and 9 of Chapter 163A of the General Statutes, the Committee shall conduct an investigation into any of the following:

      (1)     The application or alleged violation of Articles 5, 6, 7, and 9 of Chapter 163A of the General Statutes and of this Article.

      (2)     Repealed by Session Laws 2007-348, s. 2, effective August 9, 2007.

      (3)     The alleged violation of the criminal law by a legislator while acting in the legislator's official capacity as a participant in the lawmaking process."

**SECTION 4.3.(a)** G.S. 163-30, as re-recodified by this act, reads as rewritten:

"**§ 163-30. County boards of elections; appointments; terms of office; qualifications; vacancies; oath of office; instructional meetings.**

(a)     In every county of the State there shall be a county board of elections, to consist of ~~three~~ five persons of good moral character who are registered voters in the county in which they are to act. Members of county boards of elections shall be appointed by the State Board of Elections on the last Tuesday in ~~June 1985,~~June, and every two years thereafter, and their terms of office shall continue for two years from the specified date of appointment and until their successors are appointed and qualified. Four members of county boards of elections shall be appointed by the State Board on the last Tuesday in June and every two years thereafter, and their terms of office shall continue for two years from the specified date of appointment and until their successors are appointed and qualified. One member of the county boards of elections shall be appointed by the Governor to be the chair of the county board on the last Tuesday in June and every two years thereafter, and that member's term of office shall continue for two years from the specified date of appointment and until a successor is appointed and qualified. ~~Not~~Of the

EXHIBIT 4

appointments by the State Board, not more than two members of the county board of elections shall belong to the same political party.

 (b) No person shall be eligible to serve as a member of a county board of elections who meets any of the following criteria:

  (1) ~~holds~~Holds any elective office under the government of the United States, or of the State of North Carolina or any political subdivision thereof.

  (2) ~~No person who holds~~Holds any office in a state, congressional district, county or precinct political party or ~~organization,~~organization. Provided, however, that the position of delegate to a political party convention shall not be considered an office for the purpose of this subdivsion.

  (3) ~~or who is~~Is a campaign manager or treasurer of any candidate or political party in a primary or ~~election,~~election. ~~shall be eligible to serve as a member of a county board of elections, provided however that the position of delegate to a political party convention shall not be considered an office for the purpose of this section.~~

  (4) ~~No person shall be eligible to serve as a member of a county board of elections who is~~Is a candidate for nomination or election.

  (5) ~~No person shall be eligible to serve as a member of a county board of elections who is~~Is the wife, husband, son, son in law, daughter, daughter in law, mother, mother in law, father, father in law, sister, sister in law, brother, brother in law, aunt, uncle, niece, or nephew of any candidate for nomination or election. Upon any member of the board of elections becoming ineligible, that member's seat shall be declared vacant. This ~~paragraph~~ subdivision only applies if the county board of elections is conducting the election for which the relative is a candidate.

 (c) The State ~~chairman~~ chair of each political party shall have the right to recommend to the State Board ~~of Elections~~ three registered voters in each county for appointment to the board of elections for that county. If such recommendations are received by the State Board 15 or more days before the last Tuesday in ~~June 1985,~~June 2019, and each two years thereafter, it shall be the duty of the State Board ~~of Elections~~ to appoint the county boards from the names thus recommended.

 (d) Whenever a vacancy occurs in the membership of a county board of elections for any cause the State ~~chairman~~ chair of the political party of the vacating member shall have the right to recommend two registered voters of the affected county for such office, and it shall be the duty of the State Board ~~of Elections~~ to fill the vacancy from the names thus recommended.

 (e) At the meeting of the county board of elections required by G.S. 163 31 to be held on Tuesday following the third Monday in July in the year of their appointment the members shall take the following oath of office:

"I, _____, do solemnly swear (or affirm) that I will support the Constitution of the United States; that I will be faithful and bear true allegiance to the State of North Carolina and to the constitutional powers and authorities which are or may be established for the government thereof; that I will endeavor to support, maintain and defend the Constitution of said State, not inconsistent with the Constitution of the United States; and that I will well and truly execute the duties of the office of member of the _____ County Board of Elections to the best of my knowledge and ability, according to law; so help me God."

 (f) Each member of the county board of elections shall attend each instructional meeting held pursuant to G.S. 163-46, unless excused for good cause by the ~~chairman~~ chair of the board, and shall be paid the sum of twenty five dollars ($25.00) per day for attending each of those meetings."

 **SECTION 4.3.(b)** G.S. 163-31, as re-recodified by this act, reads as rewritten:
"**§ 163-31. Meetings of county boards of elections; quorum; minutes.**

Case 3:19-cv-00226-RJC-DSC Document 8-4 Filed 06/07/19 Page 10 of 21

EXHIBIT 4

(a)     In each county of the State the members of the county board of elections shall meet at the courthouse or board office at noon on the Tuesday following the third Monday in July in the year of their appointment ~~by the State Board of Elections~~ and, after taking the oath of office provided in G.S. 163-30, they shall organize by electing one member ~~chairman and another member~~ secretary of the county board of elections.

(b)     On the Tuesday following the third Monday in August of the year in which they are appointed the county board of elections shall meet and appoint precinct chief judges and judges of elections.

(c)     The board may hold other meetings at such times as the ~~chairman~~ chair of the board, or any ~~two~~ three members thereof, may direct, for the performance of duties prescribed by law.

(d)     A majority of the members shall constitute a quorum for the transaction of board business. The ~~chairman~~ chair shall notify, or cause to be notified, all members regarding every meeting to be held by the board.

(e)     The county board of elections shall keep minutes recording all proceedings and findings at each of its meetings. The minutes shall be recorded in a book which shall be kept in the board office and it shall be the responsibility of the secretary, elected by the board, to keep the required minute book current and accurate. The secretary of the board may designate the director of elections to record and maintain the minutes under ~~his~~ the secretary's supervision."

**SECTION 4.4.(a)**  G.S. 163-278.34(f), as re-recodified by this act, reads as rewritten:

"(f)     ~~Notifying and Consulting With District Attorney.~~OAH Review. – ~~Before~~ After assessing a civil penalty under subsection (b) of this section or imposing a civil remedy under subsection (c) of this section, appeal of the decision of the State Board under this section shall ~~notify and consult with the district attorney who would be responsible under G.S. 163A-1445 for bringing a criminal prosecution concerning the violation.~~be in accordance with Article 3 of Chapter 150B of the General Statutes."

**SECTION 4.4.(b)**  G.S. 150B-38(a)(6) is repealed.

**SECTION 4.5.(a)**  G.S. 150B-1(c) and (d) read as rewritten:

"(c)     Full Exemptions. – This Chapter applies to every agency except:

(1)     The North Carolina National Guard in exercising its court-martial jurisdiction.

(2)     The Department of Health and Human Services in exercising its authority over the Camp Butner reservation granted in Article 6 of Chapter 122C of the General Statutes.

(3)     The Utilities Commission.

(4)     Repealed by Session Laws 2011-287, s. 21(a), effective June 24, 2011, and applicable to rules adopted on or after that date.

(5)     Repealed by Session Laws 2011-401, s. 1.10(a), effective November 1, 2011.

~~(6)     The Bipartisan State Board of Elections and Ethics Enforcement in administering the HAVA Administrative Complaint Procedure of Part 4 of Article 17 of Chapter 163A of the General Statutes.~~

(7)     The North Carolina State Lottery.

(8)     [Expired June 30, 2012.]

(d)     Exemptions from Rule Making. – Article 2A of this Chapter does not apply to the following:

…

~~(16)     The Bipartisan State Board of Elections and Ethics Enforcement with respect to Subchapter II of Chapter 163A of the General Statutes.~~

…."

**SECTION 4.5.(b)**  G.S. 150B-2(8a) reads as rewritten:

"(8a)     "Rule" means any agency regulation, standard, or statement of general applicability that implements or interprets an enactment of the General Assembly or Congress or a regulation adopted by a federal agency or that

EXHIBIT 4

describes the procedure or practice requirements of an agency. The term includes the establishment of a fee and the amendment or repeal of a prior rule. The term does not include the following:

a.  Statements concerning only the internal management of an agency or group of agencies within the same principal office or department enumerated in G.S. 143A-11 or 143B-6, including policies and procedures manuals, if the statement does not directly or substantially affect the procedural or substantive rights or duties of a person not employed by the agency or group of agencies.

b.  Budgets and budget policies and procedures issued by the Director of the Budget, by the head of a department, as defined by G.S. 143A-2 or G.S. 143B-3, by an occupational licensing board, as defined by ~~G.S. 93B-1, or by the Bipartisan State Board of Elections and Ethics Enforcement.~~G.S. 93B-1.

c.  Nonbinding interpretative statements within the delegated authority of an agency that merely define, interpret, or explain the meaning of a statute or rule.

d.  A form, the contents or substantive requirements of which are prescribed by rule or statute.

e.  Statements of agency policy made in the context of another proceeding, including:
    1.  Declaratory rulings under G.S. 150B-4.
    2.  Orders establishing or fixing rates or tariffs.

f.  Requirements, communicated to the public by the use of signs or symbols, concerning the use of public roads, bridges, ferries, buildings, or facilities.

g.  Statements that set forth criteria or guidelines to be used by the staff of an agency in performing audits, investigations, or inspections; in settling financial disputes or negotiating financial arrangements; or in the defense, prosecution, or settlement of cases.

h.  Scientific, architectural, or engineering standards, forms, or procedures, including design criteria and construction standards used to construct or maintain highways, bridges, or ferries.

i.  Job classification standards, job qualifications, and salaries established for positions under the jurisdiction of the State Human Resources Commission.

j.  Establishment of the interest rate that applies to tax assessments under G.S. 105-241.21.

k.  The State Medical Facilities Plan, if the Plan has been prepared with public notice and hearing as provided in G.S. 131E-176(25), reviewed by the Commission for compliance with G.S. 131E-176(25), and approved by the Governor.

*l.*  Standards adopted by the Department of Information Technology applied to information technology as defined by G.S. 147-33.81."

**SECTION 4.5.(c)**  G.S 163-82.12, as recodified by this act, reads as rewritten:

"**§ 163-82.12.  Promulgation of guidelines relating to computerized voter registration.**

The State Board of Elections shall make all guidelines necessary to administer the statewide voter registration system established by this Article. All county boards of elections shall follow these guidelines and cooperate with the State Board of Elections in implementing guidelines. These guidelines shall include provisions for all of the following:

EXHIBIT 4

(1)    Establishing, developing, and maintaining a computerized central voter registration file.

(2)    Linking the central file through a network with computerized voter registration files in each of the counties.

(3)    Interacting with the computerized drivers license records of the Division of Motor Vehicles and with the computerized records of other public agencies authorized to accept voter registration applications.

(4)    Protecting and securing the data.

(5)    Converting current voter registration records in the counties in computer files that can be used on the statewide computerized registration system.

(6)    Enabling the statewide system to determine whether the voter identification information provided by an individual is valid.

(7)    Enabling the statewide system to interact electronically with the Division of Motor Vehicles system to validate identification information.

(8)    Enabling the Division of Motor Vehicles to provide real-time interface for the validation of the drivers license number and last four digits of the social security number.

(8b)    Notifying voter-registration applicants whose drivers license or last four digits of social security number does not result in a validation, attempting to resolve the discrepancy, initiating investigations under G.S. 163-33(3) or challenges under Article 8 of this Chapter where warranted, and notifying any voters of the requirement under G.S. 163-166.12(b2) to present identification when voting.

(9)    Enabling the statewide system to assign a unique identifier to each legally registered voter in the State.

(10)    Enabling the State Board of Elections to assist the Division of Motor Vehicles in providing to the jury commission of each county, as required by G.S. 20-43.4, a list of all registered voters in the county and all persons in the county with drivers license records.

~~These guidelines shall not be considered to be rules subject to Article 2A of Chapter 150B of the General Statutes. However, the State Board shall publish in the North Carolina Register the guidelines and any changes to them after adoption, with that publication noted as information helpful to the public under G.S. 150B-21.17(a)(6). Copies of those guidelines shall be made available to the public upon request or otherwise by the State Board.~~"

**SECTION 4.5.(d)**  G.S 163-91, as recodified by this act, reads as rewritten:

"**§ 163-91.  Complaint procedure.**

(a)    The State Board of Elections shall establish a complaint procedure as required by section 402 of Title IV of the Help America Vote Act of 2002 for the resolution of complaints alleging violations of Title III of that Act.

~~(b)    With respect to the adoption of the complaint procedure under this section, the State Board of Elections is exempt from the requirements of Article 2A of Chapter 150B of the General Statutes. Prior to adoption or amendment of the complaint procedure under this section, the State Board of Elections shall complete all of the following:~~

~~(1)    Publish the proposed plan in the North Carolina Register at least 30 days prior to the adoption of the final complaint procedure.~~

~~(2)    Accept oral and written comments on the proposed complaint procedure.~~

~~(3)    Hold at least one public hearing on the proposed complaint procedure.~~

~~(c)    Hearings and final determinations of complaints filed under the procedure adopted pursuant to this section are not subject to Articles 3 and 4 of Chapter 150B of the General Statutes.~~"

**SECTION 4.5.(e)**  G.S 163-132.5B, as recodified by this act, is repealed.

EXHIBIT 4

SECTION 4.5.(f)  G.S 163-165.7(d), as recodified by this act, reads as rewritten:

"(d)  **(Effective until January 1, 2018 or September 1, 2019 – see note)** Subject to the provisions of this Chapter, the State Board of Elections shall prescribe rules for the adoption, handling, operation, and honest use of certified voting systems, including all of the following:

(1)  Procedures for county boards of elections to utilize when recommending the purchase of a certified voting system for use in that county.
(2)  Form of official ballot labels to be used on voting systems.
(3)  Operation and manner of voting on voting systems.
(4)  Instruction of precinct officials in the use of voting systems.
(5)  Instruction of voters in the use of voting systems.
(6)  Assistance to voters using voting systems.
(7)  Duties of custodians of voting systems.
(8)  Examination and testing of voting systems in a public forum in the county before and after use in an election.
(9)  Notwithstanding G.S. 132-1.2, procedures for the review and examination of any information placed in escrow by a vendor pursuant to G.S. 163-165.9A by only the following persons:
    a.  State Board of Elections.
    b.  Department of Information Technology.
    c.  The State chairs of each political party recognized under G.S. 163-96.
    d.  The purchasing county.
    Each person listed in sub-subdivisions a. through d. of this subdivision may designate up to three persons as that person's agents to review and examine the information. No person shall designate under this subdivision a business competitor of the vendor whose proprietary information is being reviewed and examined. For purposes of this review and examination, any designees under this subdivision and the State party chairs shall be treated as public officials under G.S. 132-2.
(10)  With respect to electronic voting systems, procedures to maintain the integrity of both the electronic vote count and the paper record. Those procedures shall at a minimum include procedures to protect against the alteration of the paper record after a machine vote has been recorded and procedures to prevent removal by the voter from the voting enclosure of any paper record or copy of an individually voted ballot or of any other device or item whose removal from the voting enclosure could permit compromise of the integrity of either the machine count or the paper record.
(11)  Compliance with section 301 of the Help America Vote Act of 2002.

~~Any rules adopted under this subsection shall be in conjunction with procedures and standards adopted under G.S. 163-182.1, are exempt from Chapter 150B of the General Statutes, and are subject to the same procedures for notice and publication set forth in G.S. 163-182.1.~~

(d)  **(Effective January 1, 2018 or September 1, 2019 – see note)** Subject to the provisions of this Chapter, the State Board of Elections shall prescribe rules for the adoption, handling, operation, and honest use of certified voting systems, including all of the following:

(1)  Procedures for county boards of elections to utilize when recommending the purchase of a certified voting system for use in that county.
(2)  Form of official ballot labels to be used on voting systems.
(3)  Operation and manner of voting on voting systems.
(4)  Instruction of precinct officials in the use of voting systems.
(5)  Instruction of voters in the use of voting systems.
(6)  Assistance to voters using voting systems.
(7)  Duties of custodians of voting systems.

EXHIBIT 4

(8)     Examination and testing of voting systems in a public forum in the county before and after use in an election.

(9)     Notwithstanding G.S. 132-1.2, procedures for the review and examination of any information placed in escrow by a vendor pursuant to G.S. 163-165.9A by only the following persons:

     a.     State Board of Elections.

     b.     Department of Information Technology.

     c.     The State chairs of each political party recognized under G.S. 163-96.

     d.     The purchasing county

     Each person listed in sub-subdivisions a. through d. of this subdivision may designate up to three persons as that person's agents to review and examine the information. No person shall designate under this subdivision a business competitor of the vendor whose proprietary information is being reviewed and examined. For purposes of this review and examination, any designees under this subdivision and the State party chairs shall be treated as public officials under G.S. 132-2.

(10)    With respect to electronic voting systems, procedures to maintain the integrity of both the electronic vote count and the paper ballot. Those procedures shall at a minimum include procedures to protect against the alteration of the paper ballot after a machine vote has been recorded and procedures to prevent removal by the voter from the voting enclosure of any individually voted paper ballot or of any other device or item whose removal from the voting enclosure could permit compromise of the integrity of either the machine count or the paper ballot.

(11)    Compliance with section 301 of the Help America Vote Act of 2002.

~~Any rules adopted under this subsection shall be in conjunction with procedures and standards adopted under G.S. 163-182.1, are exempt from Chapter 150B of the General Statutes, and are subject to the same procedures for notice and publication set forth in G.S. 163-182.1.~~"

**SECTION 4.5.(g)**  G.S. 163-258.30(a), as re-recodified by this act, reads as rewritten:

"(a)    The State Board of Elections shall adopt rules and regulations to carry out the intent and purpose of G.S. 163-258.28 and G.S. 163-258.29 and to ensure that a proper list of persons voting under said sections shall be maintained by the boards of elections, and to ensure proper registration ~~records, and such rules and regulations shall not be subject to the provisions of Article 2A of Chapter 150B of the General Statutes.~~records."

**SECTION 4.5.(h)**  G.S. 120C-101(c), as re-recodified by this act, is repealed.

**SECTION 4.6.**  G.S. 163-278.6(8j), as re-recodified by this act, reads as rewritten:

"(8j)    The term "electioneering communication" means any broadcast, cable, or satellite communication, or mass mailing, or telephone bank that has all the following characteristics:

     a.     Refers to a clearly identified candidate for elected office.

     b.     In the case of the general election in November of the even-numbered year is aired or transmitted ~~after September 7 of that year, and in the case of any other election is aired or transmitted~~ within ~~60~~ 30 days of the ~~time set for absentee voting to begin pursuant to G.S. 163A-1300, 163A-1301, 163A-1302, 163A-1303, and 163A-1304 in an~~ election for that office.

     c.     May be received by either:

          1.     50,000 or more individuals in the State in an election for statewide office or 7,500 or more individuals in any other election if in the form of broadcast, cable, or satellite communication.

EXHIBIT 4

      2.    20,000 or more households, cumulative per election, in a statewide election or 2,500 households, cumulative per election, in any other election if in the form of mass mailing or telephone bank."

**SECTION 4.7.** G.S. 120-2.4 reads as rewritten:

"**§ 120-2.4. Opportunity for General Assembly to remedy defects.**

(a)     If the General Assembly enacts a plan apportioning or redistricting State legislative or congressional districts, in no event may a court impose its own substitute plan unless the court first gives the General Assembly a period of time to remedy any defects identified by the court in its findings of fact and conclusions of law. That period of time shall not be less than two ~~weeks.~~weeks, provided, however, that if the General Assembly is scheduled to convene legislative session within 45 days of the date of the court order that period of time shall not be less than two weeks from the convening of that legislative session.

(a1)    In the event the General Assembly does not act to remedy any identified defects to its plan within that period of time, the court may impose an interim districting plan for use in the next general election only, but that interim districting plan may differ from the districting plan enacted by the General Assembly only to the extent necessary to remedy any defects identified by the court.

(b)     Notwithstanding any other provision of law or authority of the Bipartisan State Board of Elections and Ethics Enforcement under Subchapter III of Chapter 163A of the General Statutes, the Bipartisan State Board of Elections and Ethics Enforcement shall have no authority to alter, amend, correct, impose, or substitute any plan apportioning or redistricting State legislative or congressional districts other than a plan imposed by a court under this section or a plan enacted by the General Assembly."

**SECTION 4.8.** G.S. 163-231(a), as re-recodified by this act, reads as rewritten:

"(a)     Procedure for Voting Absentee Ballots. – In the presence of two persons who are at least 18 years of age, and who are not disqualified by G.S. 163-226.3(a)(4) or G.S. 163-237(b1), the voter shall do all of the following:

      (1)    Mark the voter's ballots, or cause them to be marked by that person in the voter's presence according to the voter's instruction.

      (2)    Fold each ballot separately, or cause each of them to be folded in the voter's presence.

      (3)    Place the folded ballots in the container-return envelope and securely seal it, or have this done in the voter's presence.

      (4)    Make the application printed on the container-return envelope according to the provisions of G.S. 163-229(b) and make the certificate printed on the container-return envelope according to the provisions of G.S. 163-229(b).

      (5)    Require those two persons in whose presence the voter marked that voter's ballots to sign the application and certificate as witnesses and to indicate those persons' addresses. Failure to list a ZIP code does not invalidate the application and certificate.

      (6)    Do one of the following:

            a.    Have the application notarized. The notary public may be the person in whose presence the voter marked that voter's ballot.

            b.    Have the two persons in whose presence the voter marked that voter's ballots to certify that the voter is the registered voter submitting the marked ballots.

Alternatively to the prior paragraph of this subsection, any requirement for two witnesses shall be satisfied if witnessed by one notary public, who shall comply with all the other requirements of that paragraph. The notary shall affix a valid notarial seal to the envelope, and include the word "Notary Public" below his or her signature.

EXHIBIT 4

The persons in whose presence the ballot is marked shall at all times respect the secrecy of the ballot and the privacy of the absentee voter, unless the voter requests assistance and that person is otherwise authorized by law to give assistance. When thus executed, the sealed container-return envelope, with the ballots enclosed, shall be transmitted in accordance with the provisions of subsection (b) of this section to the county board of elections which issued the ballots."

**SECTION 4.9.** G.S. 163-228, as re-recodified by this act, reads as rewritten:

"**§ 163-228. Register of absentee requests, applications, and ballots issued; a public record.**

(a)    The State Board of Elections shall approve an official register in which the county board of elections in each county of the State shall record the following information:

 (1)    Name of voter for whom application and ballots are being requested, and, if applicable, the name and address of the voter's near relative or verifiable legal guardian who requested the application and ballots for the voter.

 (2)    Number of assigned voter's application when issued.

 (3)    Precinct in which applicant is registered.

 (4)    Address to which ballots are to be mailed, or, if the voter voted pursuant to G.S. 163-227.2, a notation of that fact.

 (5)    Repealed by Session Laws 2009-537, s. 3, effective January 1, 2010, and applicable with respect to elections held on or after that date.

 (6)    Date request for application for ballots is received by the county board of elections.

 (7)    The voter's party affiliation.

 (8)    The date the ballots were mailed or delivered to the voter.

 (9)    Whatever additional information and official action may be required by this Article.

(b)    The State Board of Elections may provide for the register to be kept by electronic data processing equipment, and a copy shall be printed out each business day or a supplement printed out each business day of new information.

(c)    The register of absentee requests, applications and ballots issued shall constitute a public record and shall be opened to the inspection of any registered voter of the county within 60 days before and 30 days after an election in which absentee ballots were authorized, or at any other time when good and sufficient reason may be assigned for its inspection.

(d)    The State Board shall require the information in the official register provided for in this section and the list required by G.S. 163-232 to be transmitted to the State Board. The State Board shall adopt rules to implement this subsection, including frequency of transmittal."

**SECTION 4.10.(a)** G.S. 1-267.1 reads as rewritten:

"**§ 1-267.1. Three-judge panel for actions challenging plans apportioning or redistricting State legislative or congressional districts; claims challenging the facial validity of an act of the General Assembly.**

…

(b)    Whenever any person files in the Superior Court of Wake County any action challenging the validity of any act of the General Assembly that apportions or redistricts State legislative or congressional districts, a copy of the complaint shall be served upon the senior resident superior court judge of Wake County, who shall be the presiding judge of the three-judge panel required by subsection (a) of this section. Upon receipt of that complaint, the senior resident superior court judge of Wake County shall notify the Chief Justice, who shall appoint two additional resident superior court judges to the three-judge panel of the Superior Court of Wake County to hear and determine the action. Before making those appointments, the Chief Justice shall consult with the North Carolina Conference of Superior Court Judges, which shall provide the Chief Justice with a list of recommended appointments. To ensure that members of the three-judge panel are drawn from different regions of the State, the Chief Justice shall appoint to

EXHIBIT 4

the three-judge panel one resident superior court judge from the First through ~~Fourth~~ Third Judicial Divisions and one resident superior court judge from the ~~Fifth~~ Fourth through ~~Eighth~~ Fifth Judicial Divisions. In order to ensure fairness, to avoid the appearance of impropriety, and to avoid political bias, no member of the panel, including the senior resident superior court judge of Wake County, may be a former member of the General Assembly. Should the senior resident superior court judge of Wake County be disqualified or otherwise unable to serve on the three-judge panel, the Chief Justice shall appoint another resident superior court judge of Wake County as the presiding judge of the three-judge panel. Should any other member of the three-judge panel be disqualified or otherwise unable to serve on the three-judge panel, the Chief Justice shall appoint as a replacement another resident superior court judge from the same group of judicial divisions as the resident superior court judge being replaced.

…

(b2)    For each challenge to the validity of statutes and acts subject to subsection (a1) of this section, the Chief Justice of the Supreme Court shall appoint three resident superior court judges to a three-judge panel of the Superior Court of Wake County to hear the challenge. The Chief Justice shall appoint a presiding judge of each three-judge panel. To ensure that members of each three-judge panel are drawn from different regions of the State, the Chief Justice shall appoint to each three-judge panel one resident superior court judge from the ~~First, Second, or Fourth~~ First or Second Judicial Division, one resident superior court judge from the ~~Seventh or Eighth~~ Third or Fourth Judicial Division, and one resident superior court judge from the ~~Third, Fifth, or Sixth~~ Fifth Judicial Division. Should any member of a three-judge panel be disqualified or otherwise unable to serve on the three-judge panel or be removed from the panel at the discretion of the Chief Justice, the Chief Justice shall appoint as a replacement another resident superior court judge from the same group of judicial divisions as the resident superior court judge being replaced.

….\"

SECTION 4.10.(b)  This section becomes effective January 1, 2019.

SECTION 4.11.(a)  G.S. 138A-10(a), as re-recodified by this act, reads as rewritten:

"**§ 138A-10.  Powers and duties.**

(a)    In addition to other powers and duties specified in this Chapter, the Commission shall:

…

(6a)    Issue confidential recommendations to the State Board of Elections regarding the appropriateness of a criminal referral of campaign finance violations.

….\"

SECTION 4.11.(b)    Article 2 of Chapter 138A of the General Statutes, as re-recodified by this act, is amended by adding a new section to read:

"**§ 138A-13.5.   Recommendations Regarding Criminal Referrals of Campaign Finance Violations.**

Upon request by the State Board of Elections, the Commission shall offer confidential recommendations regarding the appropriateness of a criminal referral for campaign finance violations. The Commission shall employ staff to conduct an investigation. The investigation and vote of the Commission on the recommendation shall be completed within 90 days of receipt of the request from the State Board of Elections.\"

SECTION 4.11.(c)  G.S. 163-278.22, as re-recodified by this act, reads as rewritten:

"**§ 163-278.22.  Duties of State Board.**

It shall be the duty and power of the State Board:

…

(7a)    To request and receive confidential recommendations from the State Ethics Commission regarding the appropriateness of a criminal referral of campaign finance violations.

EXHIBIT 4

(8)     After ~~investigation,~~ <u>investigation and receipt of the confidential recommendations regarding the appropriateness of a criminal referral for campaign finance violations,</u> to report apparent violations by candidates, political committees, referendum committees, legal expense funds, individuals or persons to the proper district attorney as provided in G.S. 163-278.27.

…."

**SECTION 4.11.(d)** G.S. 163-278.27, as re-recodified by this act, reads as rewritten:
"**§ 163-278.27. Criminal penalties; duty to report and prosecute.**

(a)     Any individual, candidate, political committee, referendum committee, treasurer, person or media who intentionally violates the applicable provisions of G.S. 163-278.7, 163-278.8, 163-278.9, 163-278.10, 163-278.11, 163-278.12, 163-278.13, 163-278.13B, 163-278.14, 163-278.16, 163-278.16B, 163-278.17, 163-278.18, 163-278.19, 163-278.20, 163-278.39, 163-278.40A, 163-278.40B, 163-278.40C, 163-278.40D, 163-278.40E, or 163-278.40J is guilty of a Class 2 misdemeanor. The statute of limitations as stated in G.S. 15-1 shall run from the day the last report is due to be filed with the appropriate board of elections for the election cycle for which the violation occurred.

(a1)    A violation of G.S. 163-278.32 by making a certification knowing the information to be untrue is a Class I felony.

(a2)    A person or individual who intentionally violates G.S. 163-278.14(a) or G.S. 163-278.19(a) and the unlawful contributions total more than ten thousand dollars ($10,000) per election is guilty of a Class I felony.

<u>(a3)    The Board shall refer apparent violations under this section to the State Ethics Commission. The State Ethics Commission shall investigate and make confidential recommendations to the Board regarding the appropriateness of a criminal referral for those alleged violations, as provided in G.S. 138A-13.5. The Board shall not take action under subsection (b) of this section for 90 days after the referral to the State Ethics Commission.</u>

(b)     ~~Whenever~~ <u>Following receipt and consideration of the confidential recommendation from the State Ethics Commission as provided in subsection (a3) of this section,</u> if the Board has knowledge of or has reason to believe there has been a violation of any section of this Article, it shall report that fact, together with accompanying ~~details,~~<u>details and a copy of the recommendation issued by the State Ethics Commission,</u> to the following prosecuting authorities:

(1)     In the case of a candidate for nomination or election to the State Senate or State House of Representatives: report to the district attorney of the prosecutorial district in which the candidate for nomination or election resides;

(2)     In the case of a candidate for nomination or election to the office of Governor, Lieutenant Governor, Secretary of State, State Auditor, State Treasurer, State Superintendent of Public Instruction, State Attorney General, State Commissioner of Agriculture, State Commissioner of Labor, State Commissioner of Insurance, and all other State elective offices, Justice of the Supreme Court, Judge of the Court of Appeals, judge of a superior court, judge of a district court, and district attorney of the superior court: report to the district attorney of the prosecutorial district in which Wake County is located;

(3)     In the case of an individual other than a candidate, including, without limitation, violations by members of political committees, referendum committees or treasurers: report to the district attorney of the prosecutorial district in which the individual resides; and

(4)     In the case of a person or any group of individuals: report to the district attorney or district attorneys of the prosecutorial district or districts in which

EXHIBIT 4

any of the officers, directors, agents, employees or members of the person or group reside.

(c)     Upon receipt of such a report from the Board, the appropriate district attorney shall prosecute the individual or persons alleged to have violated a section or sections of this Article.

(d)     As a condition of probation, a sentencing judge may order that the costs incurred by the State Board of Elections in investigating and aiding the prosecution of a case be paid to the State Board of Elections by the defendant on such terms and conditions as set by the judge."

SECTION 4.11.(e)  This section is effective January 31, 2019, and applies to referrals of violations made on or after that date by the State Board of Elections to prosecuting authorities pursuant to G.S. 163-278.27, as re-recodified by this act and amended by this section.

## PART V. REPORT ON ABSENTEE BALLOT FRAUD INVESTIGATIONS

SECTION 5.  By April 1, 2019, the State Board of Elections shall report and make recommendations to the Joint Legislative Elections and Ethics Oversight Committee on absentee ballot fraud. The report shall address all of the following:

(1)     Efforts to identify and investigate instances of potential mail-in ballot harvesting.

(2)     Data and statistics on the number of requests for mail-in absentee ballots, the number of returned mail-in absentee ballots for the past five election cycles, and any trends or patterns that appear analyzing those data and statistics.

(3)     Any other related matter identified by the State Board impacting voting absentee ballot.

## PART VI. EFFECTIVE DATE

SECTION 6.1.  Consistent with this act, when re-recodifying as directed under this act, the Revisor is authorized to change all references to the Bipartisan State Board of Elections and Ethics Enforcement to instead be references to the State Board of Elections, State Ethics Commission, or Secretary of State, as appropriate. The Revisor may modify statutory citations throughout the General Statutes, as appropriate, and may modify any references to statutory divisions, such as "Chapter," "Subchapter," "Article," "Part," "section," and "subsection"; adjust the order of lists of multiple statutes to maintain statutory order; correct terms and conform names and titles changed by this act; eliminate duplicative references to the State Boards that result from the changes authorized by this section; and make conforming changes to catch lines and references to catch lines. The Revisor may also adjust subject and verb agreement and the placement of conjunctions. The Revisor shall consult with the Bipartisan State Board of Elections and Ethics Enforcement, the State Board of Elections, the State Ethics Commission, and the Secretary of State, as appropriate, on this recodification.

SECTION 6.2.(a)     Notwithstanding G.S. 163-19, 163-30, and 138A-7, as re-recodified by this act, appointments to the State Board of Elections, county boards of elections, and State Ethics Commission shall be made as soon as possible upon enactment of this act, and no further appointments shall be required in 2019, other than to fill vacancies as may occur. The requirements of G.S. 163-19(f)(5) shall not apply to any member of the Bipartisan State Board of Elections and Ethics Enforcement serving on the effective date of this act who is appointed to the State Board of Elections in 2019. In making appointments to the State Board of Elections and State Ethics Commission, any service on the Bipartisan State Board of Elections and Ethics Enforcement shall be considered service for purposes of consecutive terms.

SECTION 6.2.(b)  Notwithstanding G.S. 163-27, the term of office of the Executive Director of the State Board of Elections shall begin upon appointment, which shall be made as soon as possible after the State Board of Elections' initial meeting, and expire in May 2021.

EXHIBIT 4

**SECTION 6.3.**  Except as otherwise provided, this act is effective when it becomes law.

In the General Assembly read three times and ratified this the 12th day of December, 2018.


s/  Philip E. Berger
    President Pro Tempore of the Senate


s/  Tim Moore
    Speaker of the House of Representatives


VETO   Roy Cooper
Governor


Became law notwithstanding the objections of the Governor at 3:38 p.m. this 27th day of December, 2018.

s/  Sarah Lang Holland
    Senate Principal Clerk

Case 3:19-cv-00226-RJC-DSC   Document 8-4   Filed 06/07/19   Page 21 of 21