IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 3:19-CV-226-RJC-DSC

FILED
CHARLOTTE, NC
JUN 20 2019
US DISTRICT COURT
WESTERN DISTRICT OF NC

| | |
|---|---|
| LISA CAROL RUDISILL,<br><br>Plaintiff,<br><br>v.<br><br><br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS,<br>Defendant. | PLAINTIFF'S MEMORANDUM IN RESPONSE TO MOTION TO DISMISS |

Plaintiff, Lisa Carol Rudisill, pro se complainant in the above-entered case, respectfully submits this memorandum in response to the Motion to Dismiss entered June 7th, 2019 electronically and signed by attorney for the defense, Paul M. Cox, Special Deputy Attorney General.

## Summary

In a Motion to Dismiss filed by counsel for Defense North Carolina State Board of Elections under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the court has been asked to nullify the case pursued by Plaintiff Lisa Carol Rudisill challenging the decision of the board to set aside the 9th U.S. Congressional District in North Carolina of November 2018 in which candidate Mark Harris won following its investigation and to pursue a new election for 9th District Representative for North Carolina, an election whose primary was

held four days after this case was begun. Plaintiff requests that this motion to dismiss be set aside for a number of reasons herein detailed.

Counsel for the Defense has listed reasons for its motion with explanations following in these specific areas: (1) The Complaint names the State Board. As an agency of the State, however, the State Board is immune from suit in federal court under the Eleventh Amendment; (2) Plaintiff lacks standing to assert any of her claims, which may only be brought by the party injured by the State Board's investigation and decision—candidate Mark Harris; (3) The Burford abstention doctrine applies because the Complaint seeks to insert a federal court into a state's administrative proceedings; and, (4) The Complaint's factual allegations fail to state a plausible claim.

Plaintiff now responds to these points with the following statements which the court is respectfully asked to consider in deciding on this motion of defense:

(1) The Plaintiff's complaint, in fact, included the governor of the state as a named party; as an official but not an agent of the state, a suit can be brought against that person. In addition, if a state violates its constitution, there is only one place for a citizen to turn for assistance—the federal government.

(2) In the N.C. Constitution, the sovereignty of the people is stated clearly as well as their right to regulate its internal government and police thereof. In addition, the U.S. Constitution states in an amendment that it is "the right of the citizen to petition the government for redress of grievances." These general statements

provide a framework from which the Plaintiff as a citizen might pursue action to correct a perceived wrong or injustice in elections within her state.

(3) It will be shown that there has already been a sequence of federal "insertion" into the state's administrative proceedings, especially with respect to the actions of the North Carolina State Board of Elections in many ways. It is maintained that the current case is not a movement away from the norm.

(4) As many of the facts as possible have been recorded as well as possible, so the Plaintiff asks that any errors be addressed and that these be made known, if the Plaintiff's case lacks merit on this basis. Otherwise, Plaintiff would request that the case move forward.

### Argument on Plaintiff's Response Points

**(1) This suit named the governor of the state of North Carolina, who presently has appointment authority over all positions on the state board; the state also violated its constitution with respect to elections.**

The original complaint entered named the governor of the state of North Carolina as a defendant in the case. It is clear through N.C.G.S. Chapter 63A "Elections and Ethics Enforcement Act," Article 1, that the North Carolina Board of Election and Ethics Enforcement is selected and appointed by the governor of the state; in addition, the governor may remove members at his discretion. (A fact which he, indeed, did within a week of the entry of this lawsuit when he removed the chairperson of its board.)

The North Carolina Constitution Article 1, Section 6, "Separation of Powers" states, "The legislative, executive and supreme judicial powers of the State government

3

shall be forever separate and distinct from each other." This is, of course, modelled upon the United States Constitution. If, in fact, the executive branch of state government, under the governor, is in charge of elections, including determining not only the members of the North Carolina Board of Elections but also the leadership of that board, how then can powers be separated?

In fact, the North Carolina Constitution further states in Article II, "Legislative," Section 20, that "Each house shall be judge of the qualification and elections of its own members...." These words are obvious references to the state legislature, not the federal (Mark Harris was elected to 9th U.S. Congressional District of the House of Representatives); however, it is modelled on the United States Constitution which actually states that (Article 1, Section 5) "Each house shall be the Judge of the Elections, Returns and Qualification of its own members."

The North Carolina General Statutes regarding the creation of the North Carolina Board of Ethics and Elections Enforcement name the North Carolina Board as an "independent regulatory and quasi-judicial agency." Is there a branch of North Carolina government defined by the North Carolina Constitution as "independent"? Is there a branch of government of the North Carolina Constitution defined as "quasi-judicial"? It is therefore maintained that the state has violated its own constitution, a case in which the Plaintiff respectfully asks that the federal Western North Carolina District Court intervene.

4

At the same election in which Mark Harris was overturned as 9th U.S. Congressional District House member for North Carolina, an amendment was added—along with several others—at the end of the ballot attempting to change the oversight of the state Board of Elections and Ethics Enforcement to comply with the constitution. The voters did not vote to make this change. It is maintained that the balloting was done in such a way that the voters were unlikely to read or understand the amendment or to have knowledge of its meaning or consequences. It is also maintained that a separate referendum election should have been held to address such an important matter as this one, and that it not be stuck at the end of a lengthy general election ballot.

> **(2) The right of the people to address grievances and the sovereignty of the people, as well as their right to police officials and the agencies they oversee, forms a basis for the Plaintiff's suit.**

It is an inherent right of all the peoples of the United States of America to bring concerns or grievances before its officials and to ask for assistance in righting perceived discriminations and wrongs. This is a right guaranteed by the United States Constitution and again in the North Carolina Constitution, Article 1, Section 2 which states "All political power is vested in and derived from the people; all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole." This is called the "Sovereignty of the People."

In the North Carolina State Constitution, Article 1, Section 3, entitled "Internal government of the State," it states that "The people of this state have the inherent, sole, and exclusive right of regulating the internal government and police thereof…"

~~In addition,~~ United States Constitutional Amendment 1 states that it is the "right of the citizen to petition the government for redress of grievances."

As an individual of this state, a voting citizen, a native of the 9th U.S. Congressional District whose family were original land grant pioneers establishing residence in the immediate area before 1750, the Plaintiff claims to belong to the "people of the state" who have the inherent right to regulate inherent government of this state.

The reason for the filing of this case was not to secure Mark Harris's particular position as 9th Congressional District representative for North Carolina, though the Plaintiff does, in fact, support him in this role; rather, the reason in a larger sense for filing suit was to see that proper, unbiased governance of elections occurs in order to ensure that voting citizens can have faith in the state's desire to see justice and fairness in elections and all other matters acted upon.

Some would say that the actions to expel candidate Mark Harris were for that same reason—for fairness and justice. This might have been seen as true were it not for the fact that the 2016 gubernatorial election mentioned in this suit included a call for recount by incumbent Pat McCrory and an investigation, in fact, of the same counties in question in Mark Harris's investigation—leading one to think that the Harris campaign as well as other official campaigns involving those counties took this as a "green light" to whatever malfeasance might have been taking place there in elections. It would seem impossible to dismiss one request for investigation—Pat McCrory's—which then requiring another investigation which result was then to overturn the voted-in candidate.

6

In fact, according to the North Carolina Constitution, in the case of Pat McCrory's request for investigation of the results of 2016, there should have been a special ballot for the gubernatorial race of 2016. Article VI, Section 5 "Suffrage and Eligibility to Office: Elections by people and General Assembly" (2nd sentence) states that: "A contested election for any office established by Article III of this Constitution shall be determined by joint ballot of both houses of the General Assembly in the manner prescribed by law."

The "contested election" of incumbent Pat McCrory and Roy Cooper should have been determined by ballot of both General Assembly houses, when instead it was not even investigated. The same county or counties in question were involved as those in the Harris investigation, signaling a serious question of justice and fair play among election officials, overseen by the executive branch.

It seems that as a citizen, if one sees serious questions of justice within its state, it behooves them to ask why.

### (3) There has been a pattern of insertion of federal government oversight into North Carolina elections regulation; why is this different?

For more than a decade, the federal government in some form has been involved in some type of oversight of the elections process of North Carolina. There are many facts to prove this, most recently their requirement that congressional district lines be re-drawn for a number of reasons.

Most recently, according to The Charlotte Observer of Sunday, January 13, 2019 article entitled "NC election violations alleged in 2016 went to DOJ official," there were several instances in 2016 in which the United States Department of Justice was consulted

7

regarding possible election violations during the McCrory—Cooper election. Details of this can be found in Exhibit 1 of this Response to Motion to Dismiss.

This point about the insertion of federal government's into state matters has undoubtedly been raised time and again in thousands of court sessions over even two centuries of American justice. It is another obvious fact that the U.S. has gone so far as war to show its dominion over the states in various matters.

**(4) It is maintained that the facts as recorded by the Plaintiff are as close as possible to true; therefore, it is asked that the case move forward.**

Barring no other concerns, the Plaintiff in this case, Lisa Carol Rudisill, would ask that the case move forward and that the Western North Carolina District of the United States Court consider the allegations raised by the Plaintiff and come to their best conclusion in response.

It is added that the Defendant's counsel has failed to produce a clear accounting of votes in response to the one attached to the Plaintiff's original case. It is also noted that not all witnesses of Mark Harris were allowed to testify in the investigation that took place—though it is duly noted that these witnesses may not have an impact on this proceeding in any way or on the case in general.

## Conclusion

It is respectfully asked that the judges in this case be rejoined to accept this case and move forward in the proceedings if that is their conclusion following reading of all these points.

*Lisa Carol Rudisill*  June 20, 2019

8

# EXHIBIT 1

# NC election violations alleged in 2016 went to DOJ official

BY BRIAN MURPHY
AND DAN KANE
bmurphy@mcclatchydc.com
dkane@newsobserver.com

WASHINGTON

State findings of North Carolina election manipulation in 2016 were elevated as far as a top Justice Department official in Washington, D.C., but so far no charges have been filed by prosecutors at any level.

The head of the Justice Department's Public Integrity Section met with staff from the North Carolina state board of elections about allegedly improper election activities in Bladen County that occurred during the 2016 elections, according to emails obtained by The News & Observer.

AnnaLou Tirol, the acting chief of the Public Integrity Section, was scheduled to meet with Josh Lawson, the state board's general counsel, and Kim Strach, the board's executive director, on Jan. 31, 2018. The meeting in Raleigh was set up by Brian S. Meyers, an attorney in the U.S. Attorney's Office for the Eastern District of North Carolina.

The meeting took place and there has been no email correspondence between the board and the board officials emailed James Mann, another Department of Justice official, an eight-page summary of its investigation into 2016 election actions by the Patriots For Progress PAC and the Bladen County Improvement Association PAC as well as actions by McCrae Dowless, a Bladen County political operative.

In the January 2018 summary, also previously reported, state investigators reported they found "information strongly suggesting" that Dowless "was paying certain individuals to solicit absentee request forms and to collect absentee ballots from Bladen County voters. In doing so, workers employed by Dowless were required to hand-carry the ballots to Dowless in order to be paid." It is illegal, outside of very specific circumstances, to collect someone else's absentee ballot, The News & Observer has reported.

Dowless is a person of interest in the board's current investigation into possible election fraud in the North Carolina 9th Congressional District election in November. Dowless was hired by Republican Mark Harris for mail-in absentee ballot work in Bladen County. Harris leads Democrat Dan McCready by 905 votes, according to unofficial results.

The state board has refused to certify results of the election in the 9th district. The board was disbanded under a court ruling, but its staff is still investigating and plans to hold an evidentiary hearing after a new board is selected and sworn in as directed by a new state law. The seat remains vacant in the new Congress.

"The investigation into absentee voting irregularities in the 9th Congressional District continues today with as much intensity and focus as there was at the beginning," Gannon told The News & Observer.

Republicans and Democrats have lamented the fact that nothing was done despite years of allegations and investigations, all leading to the current mess. Two dozen protesters gathered at the state board offices Friday and marched to the offices of U.S. Attorney Robert J. Higdon Jr. to deliver a petition with more than 2,000 signatures calling for an investigation into the 2018 elections.

"Did the U.S. attorney investigate the very solid evidence of vote stealing in the 2016 election? No," said Jen Ferris, the director of reproductive rights at Progress North Carolina. "If they had, would we be in this situation now? No."

Public Integrity Section since a follow-up email a day after the meeting, according to Patrick Gannon, spokesman for the state board.

The Public Integrity Section, based in Washington, D.C., supervises the nationwide investigation and prosecution of election crimes, according to its website. Section attorneys prosecute selected cases against federal, state, and local officials, and are available as a source of advice and expertise to other prosecutors and investigators, according to its site.

The 2016 allegations are being investigated by Wake County District Attorney Lorrin Freeman. In 2017, the state board referred its investigation to the U.S. Attorney's Office for the Eastern District of North Carolina.

"Our findings to date suggest that individuals and potentially groups of individuals engaged in efforts to manipulate election results through the absentee ballot process," Strach wrote to John Stuart Bruce, the then-U.S. Attorney in the Eastern District, in a previously reported letter. "The evidence we have obtained suggest that those efforts may have taken place in the past and if not addressed will likely continue for future elections."

To date, no one has brought any charges related to the allegations. Nor was anyone charged after a 2010 investigation into election practices in Bladen County. That investigation, too, resulted in a referral to prosecutors.

On Feb. 1, 2018, state

*Brian Murphy:*
*202-383-6089,*
*@MurphinDC*

*News & Observer reporter Rashaan Ayesh in Raleigh contributed to this report.*

# EXHIBIT 2

FROM N. C. STATE CONSTITUTION

NORTH CAROLINA STATE CONSTITUTION
PREAMBLE
We, the people of the State of North Carolina, grateful to Almighty God, the Sovereign Ruler of Nations, for the preservation of the American Union and the existence of our civil, political and religious liberties, and acknowledging our dependence upon Him for the continuance of those blessings to us and our posterity, do, for the more certain security thereof and for the better government of this State, ordain and establish this Constitution.
ARTICLE I
DECLARATION OF RIGHTS
That the great, general, and essential principles of liberty and free government may be recognized and established, and that the relations of this State to the Union and government of the United States and those of the people of this State to the rest of the American people may be defined and affirmed, we do declare that:
Section 1. The equality and rights of persons.
We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness.
Sec. 2. Sovereignty of the people.
All political power is vested in and derived from the people; all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole.
Sec. 3. Internal government of the State.
The people of this State have the inherent, sole, and exclusive right of regulating the internal government and police thereof, and of altering or abolishing their Constitution and form of government whenever it may be necessary to their safety and happiness; but every such right shall be exercised in pursuance of law and consistently with the Constitution of the United States.
Sec. 6. Separation of powers.
The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other.
Sec. 18. Court shall be open.
All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay.

ARTICLE II
LEGISLATIVE
Sec. 20. Powers of the General Assembly.
Each house shall be judge of the qualifications and elections of its own members, shall sit upon its own adjournment from day to day, and shall prepare bills to be enacted into laws. The two houses may jointly adjourn to any future day or other place. Either house may, of its own motion, adjourn for a period not in excess of three days.

Case 3:19-cv-00226-RJC-DSC   Document 9   Filed 06/20/19   Page 12 of 14

shall be submitted to the General Assembly not later than the sixtieth calendar day of its session, and shall become effective and shall have the force of law upon adjournment sine die of the session, unless specifically disapproved by resolution of either house of the General Assembly or specifically modified by joint resolution of both houses of the General Assembly.

(11) Reconvened sessions. The Governor shall, when required by Section 22 of Article II of this Constitution, reconvene a session of the General Assembly. At such reconvened session,

NC Constitution Page 13

the General Assembly may only consider such bills as were returned by the Governor to that reconvened session for reconsideration. Such reconvened session shall begin on a date set by the Governor, but no later than 40 days after the General Assembly adjourned:

(a) For more than 30 days jointly as provided under Section 20 of Article II of this Constitution; or

(b) Sine die. If the date of reconvening the session occurs after the expiration of the terms of office of the members of the General Assembly, then the members serving for the reconvened session shall be the members for the succeeding term. (1969, c. 932, s. 1; 1977, c. 690, s. 1; 1995, c. 5, s. 2.)

ARTICLE VI
SUFFRAGE AND ELIGIBILITY TO OFFICE
Sec. 5. Elections by people and General Assembly.
All elections by the people shall be by ballot, and all elections by the General Assembly shall be viva voce. A contested election for any office established by Article III of this Constitution shall be determined by joint ballot of both houses of the General Assembly in the manner prescribed by law.

Case 3:19-cv-00226-RJC-DSC   Document 9   Filed 06/20/19   Page 13 of 14

Documents Enclosed:

Response to Motion to Dismiss

Exhibit 1: Charlotte Observer Newspaper Article January 13, 2019

Exhibit 2: Excerpts from the North Carolina State Constitution